[No. B007107. Second Dist., Div. Two. Mar. 21, 1985.]

PATRICIA A. SIMON, Plaintiff, Cross-defendant and Appellant, v. LEROY SIMON, Defendant, Cross-complainant and Respondent.

**COUNSEL**

Solton & Jacobs and Cathy A. Springford for Plaintiff, Cross-defendant and Appellant.

Leroy Simon, in pro. per., for Defendant, Cross-complainant and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant Patricia A. Simon (Patricia) and respondent Leroy Simon (Leroy) were married on April 16, 1967 and separated April 26, 1971. A petition for dissolution of marriage was filed by Leroy in May of 1971. An interlocutory judgment of dissolution of marriage was granted on February 1, 1972. A final judgment in the matter was entered October 26, 1973. No disposition was made in the proceedings respecting property owned by the parties.

During the course of the marriage and before separation, Patricia and Leroy purchased two parcels of real property, viz., a single family residence in Los Angeles in 1969 and an unimproved lot in Riverside County in 1971. The residence was purchased with a $1,000 down payment and title was taken in the couples' names as husband and wife and as joint tenants. After separation Leroy continued to live in the residence with the couple's only child and made all the payments associated with the property. The Riverside parcel was purchased for an initial payment of $100 by way of a land sale contract which both Patricia and Leroy executed. Three monthly payments of $30 were made prior to separation. The remaining balance was thereafter paid by Leroy from his separate property.

No major repairs or improvements were made on either parcel, except for the installation by Leroy of a $1,400 water meter on the Riverside lot.

In June of 1982 Patricia filed her complaint for partition and declaratory relief to establish her community property interest in the parcels. Leroy filed his cross-complaint to quiet title in January of 1983. After a nonjury trial, judgment was rendered in Leroy's favor in March of 1984. In its notice of intended decision and statement of decision the trial court set out the rationale for its determination by concluding that:

"1. The amounts of the equitable liens [specified in the judgment] to run in [Patricia's] favor represent her portion of the community interest in the respective properties, without interest.

"2. Insofar as any further claims by [Patricia] are concerned, the court finds that she is guilty of laches in not pursuing her claims until June 2, 1982, bearing in mind that the dissolution complaint (In re the Marriage of Simon, No. C 788290) was filed on May 20, *1971,* an interlocutory judgment of dissolution was entered on February 2, *1972,* and a final judgment of dissolution was entered on October 26, *1973.* (See *Henn* v. *Henn* (1980) 26 Cal.3d 323, 332-333.) In that connection, it is noted that [Leroy] had the sole responsibility for providing support of the parties' minor child, Malcolm, until [Patricia] was ordered to contribute toward his support on July 13, 1983. [Leroy] justifiably relied on [Patricia's] inactivity of more than ten years. It would be wholly inequitable at this late date to require a partition or to enforce any of [Patricia's] claims beyond her share of community property payments, without interest."

Evidentiary support for these observations derived from Leroy's testimony in propria persona to the following effect: "MR. SIMON: When Patricia and I was married back in '67, I owned my own home in Pasadena and

we lived there, I guess, three or four years, maybe longer, and a son was born from that marriage.

"So, I had been—she had begun to harass me about moving back to Los Angeles. So, I sold this one at 916 East 103rd Place, and we lived there two or three years, I guess, and she left. She left me with the baby. The boy was three years old.

"I filed for divorce, served her. She did not show the first time. Served her again. She did not show the second time.

"Now, my attorney asked me was there property and I told him yes. He said, 'Make a list of it, send me everything,' and I did.

"As matter of fact, I have documents here that—the list at that time that I made up and the letter that he sent me back with the list is in this folder.

"In February—in January 1, we bought a piece of property in Riverside County, half acre unimproved lot. It is still that way. There is nothing on it. It is in Riverside County.

"She left a month later. This is the property that she is laying claim to.

"Since then I have paid that property off. I have been maintaining our home and our son and it has cost dearly.

"If the situation had been reversed back then, and I had left home and deserted a child, the courts would have seen to it that I would pay child support, at least $100 a month.

"I have been doing this without asking for any help, and she knew she had a son on this planet.

"Last August, in a financial bind, I had to force her through the courts to pay child support. Now, those 13 years that she did not pay $100 a month would total $23,600, and I think she is getting off cheap. That is just a monetary end.

"We lived down in Watts. This is where the house is. We are surrounded by street gangs. 99th is to the north, Crips to the east, the Bloods to the west, and another gang to the north.

"I worked for Los Angeles City School Board six years until my boy was about 12 years old.

"The street gangs began to come at him. So, the only thing that I could do, I had the job that I had been paid almost $25,000 a year, and being a parent that did not run when life become a little hard, I quit that job. I gave it up and I went back to my barber shop.

"My income dropped almost double, but I stuck it out and stayed with that boy, and to this day—and what I have done, I have produced a productive peaceful human being to this point. No dope, no drugs, no run-in with the Police Department. That cost more than money.

"Those are some of the things that I am talking about.

"The boy would be 16 on May 4th, and I think I have done a pretty good job with him to this point.

"What Mrs. Simon is doing is she is asking to put her son out in the streets by selling this property and dividing the proceeds.

"There won't be much proceeds, your Honor, but the house is an old house. The wiring is not up to code. The plumbing is not up to code. The roof is leaking both in the house and the garage, and it just dumfounds me to have a mother come along and decide that she is going to put her son out in the street. I can stay anywhere. Like I have told her long before we separated, my cup always runth [*sic*] over.

"I guess that is just about all I have to say, your Honor. It just doesn't make much sense to me, but I would like the Riverside matter settled and you decide if that is okay. If not, I will just let the judge decide."

 It is clear that, subject to any appropriate defense, Patricia was entitled to bring an independent action to determine her interest in community property subsequent to the final judgment of dissolution, based on the propositions that: "Under California law, a spouse's entitlement to a share of the community property arises at the time that the property is acquired. (Civ. Code, §§ 5107, 5108, 5110.) That interest is not altered except by judicial decree or an agreement between the parties. Hence 'under settled principles of California community property law, [where] "property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, [it] is subject to future litigation, the parties being tenants in common meanwhile." ' (*In re Marriage of Brown, supra,* 15 Cal.3d [838] at pp. 850-851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], quoting *In re Marriage of Elkins* (1972) 28 Cal.App.3d 899, 903 . . . . Accord *Estate of Williams* (1950) 36 Cal.2d 289, 292-293 . . .; *Lewis* v. *Superior Court* (1978) 77 Cal.App.3d 844, 847-850 . . .;

*Irwin* v. *Irwin* (1977) 69 Cal.App.3d 317, 320-321 . . .; *Kelly* v. *Kelly* (1977) 73 Cal.App.3d 672, 676 . . . .) This rule applies to partial divisions of community property as well as divorces unaccompanied by any property adjudication whatsoever." (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10]; see also *In re Marriage of Davis* (1980) 113 Cal.App.3d 485, 488 [169 Cal.Rptr. 863].)

■ It is equally clear that one such appropriate defense is that derived from the doctrine of laches (see *Henn* v. *Henn, supra,* 26 Cal.3d 323, 333), where it is adequately established that under the circumstances present there exists an inexcusable delay on the part of a plaintiff in seeking relief and resulting prejudice from that delay to the defendant. (See *Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 120 [81 Cal.Rptr. 592, 460 P.2d 464].)

Such, in our view, was the case here.

So, in the face of the uncontroverted fact Patricia was aware she had in some fashion an interest in the property in question, there is nothing in the record to explain or justify her failure earlier to pursue her rights, such that there can be no doubt her delay in bringing suit was inexcusable. Similarly, while Leroy's actions following dissolution as hereinabove described did not directly involve the residence or Riverside parcels, it is fairly inferable that such changes in his position as did transpire were made on the basis of and in relation to his reasonable belief that all legal issues concerning the properties had been resolved, that those properties constituted assets available to him for any necessary purpose, and that his decisions in connection with raising the couples' son could be made without reference to any potential claim to an interest in those properties by Patricia. No more was required to be shown.

The judgment appealed from is affirmed.

Compton, J., and Gates, J., concurred.