[No. G001539. Fourth Dist., Div. Three. Aug. 13, 1985.]

CELIA BOWMAN, Plaintiff and Appellant, v.
MARY D. BOWMAN et al., Defendants and Respondents.

COUNSEL

James Ensign for Plaintiff and Appellant.

Linda A. Chapin for Defendant and Respondent Mary D. Bowman.

No appearance for other Defendants and Respondents.

OPINION

**SONENSHINE, Acting P. J.**—Celia Bowman appeals the court's order dismissing her complaint and entering judgment for Mary Bowman pursuant to Code of Civil Procedure section 437c. We are asked to decide whether

the court erred in applying the terminable interest rule to defeat Celia's community interest in her deceased former husband's employment pension plan benefits. We also consider whether *In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464 [194 Cal.Rptr. 237] precludes her from collecting any of the term life insurance proceeds. We hold the terminable interest rule is inapplicable to a private pension plan which is nonrestrictive in its choice of beneficiaries. And we find the trial court erred in concluding Celia had no community property interest in a life insurance policy partially funded with community funds.

Our inquiry does not end with these determinations. Mary has also alleged there were many other reasons prohibiting Celia from collecting any of her community interest in either proceeds. She renews these arguments on appeal. Some of these can be decided as a matter of law and those we address. The others, however, require factual determinations, and with those we proceed only as a guide to the trial court.

## I

### FACTS

Rudy and Celia were married on November 7, 1949. Rudy was employed in 1956 as a pilot for Pan American World Airways (Pan Am). He was still working for Pan Am at the time of his death on December 21, 1981.[1] Rudy's home life was not so stable. He and Celia separated and in 1968 divorced. Rudy and Celia's interlocutory judgment of divorce did not mention or award Rudy's pension plans or term life insurance. Rudy remarried but that marriage also ended[2] and in 1979, Rudy married Mary.

The underlying lawsuit involves Celia's and Mary's respective rights to his pension plans and life insurance. He left everything to Mary. Celia filed a complaint against Mary, Pan Am's pilot plan and Travelers Insurance Company, the group life insurer. She claimed because the plans and the life insurance were not divided at the time of their divorce she was entitled to a portion of the proceeds. She also sought declaratory relief. The trial court found Mary, *as a matter of law,* was entitled to receive all of the pension benefits and the insurance proceeds.

## II

### PENSION PLANS

#### (A) Terminable Interest Rule

Rudy was a participant in a defined benefit plan and a defined contribution plan. The plans were established on July 1, 1955, and each provides benefits

---

[1]He was twice furloughed but was reinstated both times.

[2]We are not told whether the marriage ended in divorce or death.

to beneficiaries designated by the employee. The amount paid pursuant to the benefit plan is determined by the length of service and the employee's salary. Rudy's beneficiaries receive $1,879.70 per month.

The amount paid under the contribution plan is based on the accumulated value of the employee's and employer's contributions.[3] Rudy had elected to receive a lump sum payment which amounted to $123,030.81.

■ The trial court, relying on the terminable interest rule, found Celia had no right to either of these benefits. She argues the court erred in relying on this judicially created rule established by our Supreme Court in *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649] and *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]. Celia is correct; neither *Benson* nor *Waite* are applicable.

"Risking oversimplification, the first aspect of the [terminable interest] rule postulates that the community interest in accrued benefits does not extend to pension benefits payable following the death of the employee spouse. Thus, the nonemployee spouse may not claim pension benefits earned or accrued during marriage if the employee spouse designates a third party to receive them after his death. . . . [¶] A second aspect of the Terminable Interest Doctrine postulates that the nonemployee spouse's interest in pension benefits terminates upon the death of the nonemployee spouse, so that the nonemployee spouse may not bequeath these benefits by will. . . ." (Culhane, *Terminable Interest Doctrine* (1984) 14 Sw.U.L.Rev., 613, 615-616, fns. omitted.)

The genesis of the rule appeared in *Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212 [217 P.2d 660]. There a policeman's widow sued to compel payment of a pension. She alleged under previous provisions of her husband's plan she would have been entitled to a pension at his death. As a vested third party beneficiary, she complained the deletion of those provisions was improper.

The court, however, could "find no reason for departing from the decisions which have stated that the wife of a public employee does not acquire a vested interest in a pension until it becomes payable to her. A different rule, in fact, would remove a considerable amount of the flexibility necessary for operation of pension systems, because it would mean that provisions benefiting any third person would be frozen into the law with respect to all employees then in service and that these interests could not be re-

---

[3]The employee's contributions are optional; the employer's are based on a percentage of the pilot's annual pay.

moved regardless of the consent of the employee and regardless of whether the employee was given other pension benefits which might be of greater value to him than the one sought to be eliminated. Thus, although all pension rights are earned by the employee and are part of his compensation, the rule urged by petitioner could operate to the disadvantage of the employee by making it impossible or impracticable for the governmental body to substitute a new system, designed to meet changing conditions, which would furnish a greater total benefit to the employee than he formerly had. [¶] It appears, therefore, that both the cases and the policy underlying pensions for public employees indicate that any one or more of the various benefits offered, including interests created for third persons, may be wholly eliminated prior to the time they become payable, provided, of course, the employee retains the right to a substantial pension. Accordingly, it must be held that petitioner did not obtain a separate, vested right . . . ." (*Id.,* at pp. 217-218.)

The rule was developed in *Benson* v. *City of Los Angeles, supra,* 60 Cal.2d 355. Both the first and second wives filed claims with the city for widow's pension benefits. The first Mrs. Benson claimed she had a community property interest in the benefits. The second wife based her claim on the fact she was the widow.

The Supreme Court acknowledged at the time of Mr. Benson and the first Mrs. Benson's separation, "the [trial] court found that the parties were possessed of a community property interest in the pension, [but] no division of such interest was made." (*Id.,* at p. 358.) For several reasons, the Supreme Court denied the first Mrs. Benson recovery. The "community possessed only such an interest . . . as [husband's] employment contract provided." (*Ibid.*) The pension was payable *only* to his widow; the first Mrs. Benson did not qualify. The court stated "that upon a division of the community estate she could . . . have participated therein. Undoubtedly she had an interest which she could have asserted in the payments to [husband] during his lifetime, had she sought to do so. But after [his] death the only right remaining was to enforce the city's covenant to make payments to the 'widow.'" (*Id.,* at p. 360.) Public policy considerations sanctioned such a result. "[T]o vest interests not subject to control by the employee would impose such inflexibility upon public employment that the purpose of providing for retirement would be defeated. Such purpose is said to be to induce competent persons to enter and remain in public service." (*Id.,* at p. 361.)

In *Waite,* the Supreme Court was asked to decide whether at the time of a dissolution a judge's retirement could be made payable to the judge's spouse "'or her [or his] devisee or heirs.'" (*Waite* v. *Waite, supra,* 6

Cal.3d 461, 466.) The Supreme Court concluded the spouse's interest in the plan did not survive *the judge's death.* Again, the court emphasized the fact this was a public plan and focused on the *terms* of the plan. "[T]he state has established here a pension plan in which pension benefits terminate with the death of the employee or, under optional programs, with the death of his [or her] surviving spouse. [Citations.] The state contributes no benefits to the employee's estate, his heirs, or his legatees. [¶] The state's concern, then, lies in provision for the subsistence of the employee and his spouse, not in the extension of benefits to such persons or organizations the spouse may select as the objects of her bounty. Once the spouse dies, of course, her need for subsistence ends, and the state's interest in her sustenance reaches a coincident completion. When this termination occurs, the state's concern narrows to the sustenance of the retired employee; its pension payments must necessarily be directed to that sole objective." (*Id.,* at p. 473, fn. omitted.)[4]

Many courts have been critical of the terminable interest rule.[5] However, because we find it inapposite to our fact situation, we need not decide its continuing validity.

---

[4]Relying on this logic, the court in *In re Marriage of Lionberger* (1979) 97 Cal.App.3d 56 [158 Cal.Rptr. 535], held the trial court erred when it found wife's interest in husband's plan was alienable, inheritable and assignable. Although this issue is not before us, we question *Lionberger's* extension of *Waite* from a *public* plan to a private one.

[5]In *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642 [115 Cal.Rptr. 184], the court commented, "[w]e do not believe the rule which we must follow is fair. [Husband's] pension rights constitute a bundle to which [wife], as a partner in the community during the years of marriage contributed her equal share. Why should she be deprived of her right to any single stick in the bundle?" (*Id.,* at p. 656, fn. omitted.) *Peterson,* which preceded *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], also involved vesting issues. Perhaps the court would have concluded otherwise if *Brown* had already been decided.

In *Chirmside* v. *Board of Administration* (1983) 143 Cal.App.3d 205 [191 Cal.Rptr. 605], the court declined "to approve an extension of the terminable interest doctrine to community contributions in a fully vested public retirement plan." (*Id.,* at p. 207.) The court questioned the viability of the rule in light of *In re Marriage of Brown, supra,* 15 Cal.3d 838 and *Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10]. "*Brown* represents a repudiation of the idea that the nonemployee spouse's interest in a pension is contingent or not 'vested' until he or she actually begins to receive it. [Citation.] While the holding in *Brown* can be harmonized with the *Benson-Waite* rule as to the community interest in the pension while both spouses are alive [citation], it clearly undercuts the rationale of the terminable interest doctrine in terminating a recognized property interest of the nonemployee spouse because the interest is not 'vested.'

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"*Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], in conjunction with *In re Marriage of Brown, supra,* 15 Cal.3d 838, provides persuasive authority that the terminable interest doctrine has passed into legal extinction. The trial court in the instant case recognized *Henn* 'would help us if we were concerned with the retirement benefits of a living employee.' The court found, however, '*Henn* does not provide an answer because we are concerned with death benefits.' We disagree. We are concerned with neither retirement benefits nor death benefits, but with the *accumulated contributions* of [husband]. Nor

The reason for the rule was to prohibit interference with the contractual mandates and policy considerations of public employment retirement plans. We see no purpose to be served in extending this rationale "to cut off the nonemployee spouse's community property rights in private, *i.e., nongovernmental,* pensions. . . . [T]here [can] be no argument that governmental pension statutes impliedly repealed the community property statutes. The only possible rationale for the application of the Doctrine to private pensions would postulate that the nonemployee spouse's rights, as a member of the marital community, extend only to the enforcement of the contract made on behalf of the community by the employee spouse, even if that contract operated to the detriment of the community. This argument found questionable support in *Benson* and was qualified by the proposition that the husband's right to manage and control community assets normally does not allow for their misappropriation. The argument that the nonemployee spouse's rights extended only to enforcement of a contract detrimental to the community assumed that the employee spouse had the power and the right to enter into such an agreement and thereby assumed its own conclusion." (Culhane, *Terminable Interest Doctrine, supra,* 14 Sw.U.L.Rev., 613, 643, fns. omitted.)[6]

The terminable interest rule was never intended to *deprive* a nonemployed spouse compensation for his or her spouse's interest in a pension plan. The

---

do we find anything in *Henn* which limits its holding to living parties. *Henn* held that a community asset which is not mentioned in the pleadings as community property and is left unadjudicated by the divorce decree is subject to future litigation, the parties, until adjudication, occupying the status of tenants in common. The rule allowing subsequent litigation is applicable if there was a partial division of the community property or no adjudication at all. [Citation.] Under *Henn,* [wife's] community interest in the accumulated contributions became an undivided one-half interest as a tenant in common with her former husband. His death cannot operate to deprive her of this tenancy in common interest." (*Chirmside* v. *Board of Administration, supra,* 143 Cal.App.3d 205, pp. 210-211.)

[6]The rule, even as applied to public plans, may not survive recent federal legislation. "On November 8, 1984, PL 98-615, the Civil Service Retirement Spouse Equity Act of 1984 was enacted. In terms of pension benefit protection, this legislation brings former spouses of civil servants closer to full parity with their counterparts in the private sector." (Adams & Sevitch, 1 Cal. Family Law Practice (1985) § F.63.1.) "[S]pouses of civil service employees [are] eligible to receive survivor benefits if a court order or court-approved property settlement so provides. If the employee is already divorced, he or she can voluntarily elect to provide survivor benefits for the former spouse. Since an election to provide a survivor benefit reduces the retiree's annuity, the Act requires a retiree who makes a postretirement election, in certain cases, to pay back the difference in benefits during the period between retirement and election. These redeposits are to be paid with 6% interest. A spouse must consent in writing to a waiver of survivor benefits. Survivor benefit payments will equal 55% of the retiree's annuity as adjusted by cost-of-living increases. [¶] The Act abrogates the portion of *In re Marriage of Samuels* (1979) 96 CA 3d 122, 158 CR 38, 1979 CFLR 1192, holding that under federal law a spouse has no community-property right to Civil Service death benefits." (*Id.,* at § F.63.2.)

*Waite* court[7] suggested other remedies when the terms of the plan prohibited the unemployed spouse from enjoying full equality. "Thus a spouse suffers no injury when the court, in effectuating the purposes of the pension program, awards the employee more than half the actuarial value of the pension rights; the court, if it sees fit, may compensate the spouse by an award of more than half the value of some other community asset." (*Waite* v. *Waite*, *supra,* 6 Cal.3d 461, 474.)

The nonemployed spouse has an interest in the employed spouse's benefit plan. If the interlocutory judgment does not divide that asset it still belongs to them as tenants in common. And it may, after the dissolution, be divided by a partition action. It makes no sense to say Celia and Rudy together owned their assets but at his death when the assets matured, they succeeded to Rudy's estate. The law demands the community property of the parties be evenly divided and allows the court to later award assets not adjudicated at the time of the dissolution. These benefits were community property. They were not divided. They still exist and Celia has a right to her day in court to determine the amount of her interest.

We, therefore, conclude the terminable interest rule inapplicable to these facts. Rudy was not a public employee and the plan is not a public plan. Unlike *Benson* and its progeny, the plan was not restrictive in its choice of beneficiaries. And Celia is not attempting to alienate or assign her interest prior to its maturity. She is simply seeking what is hers.

### (B) Res Judicata and Collateral Estoppel

At the time of the divorce, Celia pleaded an interest in the benefits plan. However, the interlocutory judgment of divorce did not divide it. Celia, relying on *Henn* v. *Henn, supra,* 26 Cal.3d 323, filed the underlying lawsuit seeking in her first and second causes of action to partition those undivided assets. Mary maintains the issue is res judicata because the judgment is final. She also alleges Celia is collaterally estopped because partition is possible only when the assets are omitted from both the *pleadings and the judgment.*

In *Henn,* "[n]either the pleadings nor the judgment made mention of the fully matured federal military retirement pension that [husband] was receiv-

---

[7]The court relied on reasoning from an earlier case, *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 50 [89 Cal.Rptr. 61, 473 P.2d 765]. "[W]e do not believe the Legislature has declared the employee's right to a pension so sacrosanct that it is incompatible with his [or her] spouse's ownership of her [or his] community share in it. Both employee and nonemployee own community property rights in the pension fund that are of equal stature; such rights are equally subject to the power of the divorce court."

ing at the time of the interlocutory decree." (*Id.*, at p. 327.) However, Mary places too great an emphasis on that difference. The controlling factor is whether the court divided the assets and not whether the issue was pleaded. " '[T]he crucial question is whether the benefits were actually litigated and divided in the previous proceeding. [Citation.] Here, although the pension was known to both parties, it was not awarded as an item of the marital community to one or the other of the parties.' " (*Giovannoni* v. *Giovannoni* (1981) 122 Cal.App.3d 666, 672 [176 Cal.Rptr. 154], citing from *Miller* v. *Miller* (1981) 117 Cal.App.3d 366, 371 [172 Cal.Rptr. 745].)

In *Brunson* v. *Brunson* (1985) 168 Cal.App.3d 786 [214 Cal.Rptr. 378], the husband contended "the court erred in finding [his] retainer pay was a missed asset because the military pension was considered by the court in setting spousal support payments, and was mentioned in the interlocutory judgment." (*Id.*, at p. 788.) The court found "[h]owever, mere mention of [an asset] is not an adjudication of property rights." (*Ibid.*) The judgment is therefore not final as to the pension plans and Celia is not estopped from seeking partition.

### (C) Vesting and Retroactivity

█ Mary next argues Celia has no partition rights unless the plans were vested at the time of the dissolution. She is correct.

The Supreme Court in *In re Marriage of Brown, supra,* 15 Cal.3d 838, concluded its decision "should not apply retroactively to permit a nonemployee spouse to assert an interest in nonvested pension rights when the property rights of the marriage have already been adjudicated by a decree of dissolution or separation which has become final as to such adjudication, unless the decree expressly reserved jurisdiction to divide such pension rights at a later date [citation]. Our decision will apply retroactively, however, to any case in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights." (*Id.*, at pp. 850, 851, fn. omitted.) In other words, because *Brown* is not retroactive, Celia cannot receive her share of the nonvested community pension.

Both *In re Marriage of Shaver* (1980) 107 Cal.App.3d 788 [165 Cal.Rptr. 672] and *In re Marriage of Smethurst* (1980) 102 Cal.App.3d 494 [162 Cal.Rptr. 300], however, acknowledge Celia is not precluded from pursuing those portions of the plans which were vested at the time of the parties' separation.

The trial court must therefore determine which portion of the pension was vested at the time of separation.[8]

### (D) Valuation of the Vested Portion of the Pension Plans

■ Initially, the parties disagree on whether the date of separation or the date of the interlocutory judgment is controlling. Mary correctly asserts it is the date of separation. Civil Code section 5118 provides all earnings and accumulations after separation are the separate property of the employed spouse. The section became effective March 4, 1972, after Rudy's and Celia's separation and divorce. However, in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 594 [128 Cal.Rptr. 427, 546 P.2d 1371], our Supreme Court held "that amended section 5118 governs all property rights, whenever acquired, that have not been finally adjudicated by a judgment from which the time to appeal has lapsed."

· The interlocutory judgment does not reflect a finding as to the date of separation. However, the judgment was granted on Celia's cross-complaint which alleged the September 28, 1966, date. Celia now contends the date of separation was either September 28, 1966, *or* December 19, 1967. We accept the earlier date as an implied finding by the court at that time.

Both parties ask us to determine the appropriate formula to be applied to the community interest in the pension plan. This is the trial court's function because it involves factual determinations.[9] This is not complicated because we have decided Celia is limited to receiving only her share (one-half) of the vested portion of the plan. The trial court can determine that percentage of Rudy's "pension right which [was] not subject to a condition of forfeiture if [his] employment relationship [had] terminate[d] [at the date of separation]." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 842.)

---

[8]Mary, in her brief, argues the death benefits "were clearly 'vested' only to an extremely limited amount at the time of Appellant Celia and Rudy's divorce."

[9]Mary, incorrectly relying on *Chirmside* v. *Board of Administration, supra,* 143 Cal.App.3d 205, contends Celia is limited to receiving one-half the community contributions to the plan. *Chirmside* is inapposite because there the plan proceeds consisted only of the employee's cash contributions; there was nothing else to divide.

The parties also disagree as to when Rudy's interest in the plans commenced. Rudy was enrolled in the retirement plans the day he commenced work. When he was furloughed on January 15, 1960, his accumulated retirement funds were paid to him. Mary contends the commencement date for determining Celia's interest in the plans should be when Rudy reenrolled on January 31, 1964. However, this is academic. The only relevant finding is the percentage of the plan he would have been entitled to on the date of separation.

### III

### LIFE INSURANCE PROCEEDS

#### (A) *Lorenz* and *Gonzalez*

■  Rudy first became covered under the group life insurance plan on January 31, 1964. It is a contributory policy: both employer and employee pay part of the premiums. At the time of his death, Rudy's policy provided death benefits of $225,000. He and Mary were named as beneficiaries under a declaration of trust dated May 15, 1981.

Celia claims she has an interest in the proceeds. The trial court, however, relying on *In re Marriage of Lorenz, supra,* 146 Cal.App.3d 464, found Celia had no right to any of the proceeds. Again, we disagree.

In *Lorenz,* the court refused, at the time of the parties' dissolution, to divide the husband's term life insurance. The court found the policies were not convertible into cash at that time and "therefore, not divisible . . . ." (*Id.,* at p. 468.) However, in *In re Marriage of Gonzalez* (1985) 168 Cal.App.3d 1021 [214 Cal.Rptr. 634], we declined to follow *Lorenz.* We concluded "*Lorenz* is simply incorrect in the assertion that assets such as term life insurance . . . have no economic value . . . ." (*Id.,* at p. 1024.)

We also find *Biltoft* v. *Wootten* (1979) 96 Cal.App.3d 58 [157 Cal.Rptr. 581] instructive. In *Biltoft,* the decedent husband had group life insurance through his employment. Prior to his death, but after the parties' separation, husband changed the beneficiary from his wife to his children. Wife claimed an interest in the proceeds. The court found wife had a right to her community interest portion of the proceeds because the policy was acquired during marriage and "[t]he decedent's community efforts for the 20 years prior to the separation maintained the policy in force." (*Id.,* at p. 61.)

This policy was acquired while Celia and Rudy were married. The premiums, during coverture, were paid for with community funds and efforts. Celia acquired an interest in the policy and the court erred in denying her the right to a determination of it. "These benefits were derived from the contract which had its inception during the marriage, and were preserved by the payment of the premiums out of community funds during the . . . 20 years of the marriage." (*Id.,* at pp. 61-62.)

#### (B) Missed Assets and Retroactivity

Mary also contends Celia is estopped to claim any of the insurance proceeds. She argues the policy was known at the time of the divorce. How-

ever, as discussed, *ante,* the mere mention of the assets in the pleadings does not preclude their later adjudication.

■ We held in *Gonzalez* that term life insurance is a community asset to be valued and divided at the time of dissolution. But, like the Supreme Court in *Brown,* we cannot apply the *Gonzalez* decision retroactively.[10] "The unjust distribution of property engendered by the [*Lorenz*] rule should not be perpetuated by denial of *any* retrospective effect to our decision. [¶] On the other hand, if we accord complete retroactivity to our decision today we might reopen controversies long settled by final judgment. Undoubtedly . . . counsel, relying on that decision, have often failed to list [term life insurance] as among the community assets of the marriage. In some cases the inability of the nonemployee spouse to assert an interest in [term life insurance] may have induced the court to [make other awards]. Yet under settled principles of California community property law, 'property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile.' (*In re Marriage of Elkins* (1972) 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59].) Consequently full retroactivity poses the danger that a nonemployee spouse might upset a settled property distribution by a belated assertion of an interest as a tenant in common in the employee's [term life insurance]." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 850-851.)

*Brown,* and its progeny, held that in *Henn* cases, we look to see what the parties would have been entitled to had the asset been divided at the time of the dissolution. Therefore, the trial court must decide what life insurance benefits, if any, Rudy would have been entitled to had he terminated his employment at the date of separation. That percentage, if any, will constitute the community property portion of the life insurance proceeds. Celia's interest will be one-half.

IV

LACHES

■ And finally, Mary argues "Celia is barred by laches from asserting any community property claim." She insists the 13 years which elapsed

---

[10]*Gonzalez* is to be applied retroactively, as in *Brown,* only to those "case[s] in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 851.)

from the judgment to the filing of this action is an unwarranted delay, particularly when Celia knew all along about the assets.

*Henn*'s discussion of laches related to possible prejudice to Mr. Henn caused by reimbursing his wife for amounts he had already received and spent. The focus was not on the amount of time elapsed from the divorce action to the *Henn* hearing, but on the inequities caused by the delay. In other words, prejudice is not *presumed* because of the delay.

But the trial court did not consider this issue and the relevant facts. We cannot conclude as a matter of law prejudice existed or the delay was unjustified. Therefore, the trial court must consider whether Celia was aware she had in some fashion an interest in the property in question, and her justification for not earlier pursuing her rights. Also, the court must examine how Rudy changed his position on the basis of and in relation to his reasonable belief that all legal issues concerning the properties had been resolved. (*Simon* v. *Simon* (1985) 165 Cal.App.3d 1044, 1046 [212 Cal.Rptr. 87].)

## V

### CONCLUSION

We hold the court erred in applying the terminable interest rule to these facts. We further conclude the court erred by finding as a matter of law that Celia had no interest in the life insurance proceeds. The trial court is directed, after appropriate factual considerations, to determine that portion of the benefits which was vested at the time of the dissolution and to further determine which of the insurance benefits were divisible. To the extent Celia is not precluded because of laches from claiming her share, Celia shall be entitled to one-half of that community interest.[11]

The judgment is reversed; each party to bear her own costs.

Crosby, J., and Wallin, J., concurred.

---

[11]Mary has asked this court to impose sanctions. In light of our decision, we cannot find the appeal frivolous. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].) However, the irony of the outcome has not escaped us. This victory may be pyrrhic, indeed.