Filed 1/15/25  Thompson v. Board of Administration for PERS CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MELISSA THOMPSON,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>BOARD OF ADMINISTRATION FOR PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>  Defendant and Respondent;<br><br>DONNA M. STARR,<br><br>  Real Party in Interest. | A169479<br><br>(Sonoma County<br>Super. Ct. No. SCV-270653) |

Plaintiff Melissa Thompson was married to decedent Jennifer Donovan. Prior to the decedent's death, she attempted to change the beneficiary of her monthly death benefits from her former domestic partner, real party in interest Donna M. Starr, to Thompson.  Defendant Public Employees' Retirement System (CalPERS) denied the request, concluding the decedent failed to meet the requirements of the Public Employees' Retirement Law (PERL; Gov. Code,[1] § 20000 et seq.) to modify her beneficiary designation for the monthly death benefits because Starr and the decedent's judgment of dissolution did not award the decedent the total interest in CalPERS.

---

[1] Undesignated statutory references are to the Government Code.

This dispute arose when, following the decedent's death, Thompson asked CalPERS to reconsider the decedent's request to change the beneficiary of her monthly death benefits, and CalPERS again denied the request. This appeal is taken from an order denying Thompson's petition for writ of administrative mandamus challenging a decision by the Board of Administration of CalPERS (Board) upholding CalPERS's decision. We shall affirm.

## I. BACKGROUND

Beginning in 1994, the decedent worked for the Department of Parks and Recreation, which is a part of CalPERS. In 2010, she and Starr entered a domestic partnership.

### A. *The Decedent's CalPERS Retirement Benefits*

CalPERS is a unit of the Government Operations Agency responsible for administering the retirement systems for the State of California. (See §§ 20001, 20002, 20004, 20028.) "Members of CalPERS, once vested, participate in a defined benefit retirement plan, which supplies a monthly retirement allowance under a formula comprising factors such as final compensation, service credit (i.e., the credited years of employment), and a per-service-year multiplier." (*In re Marriage of Sonne* (2010) 48 Cal.4th 118, 121.)

At the time of retirement, a CalPERS member may either elect an unmodified retirement allowance, under which the retiree will receive the full amount of the monthly retirement allowance, "or select from a group of options under which the retiree's monthly retirement allowance payments are reduced so that a selected beneficiary may receive 'survivor benefit' payments after the retiree's death, if the beneficiary survives the retiree." (*In re Marriage of Sonne* (2010) 185 Cal.App.4th 1564, 1569.)

2

As relevant here, one of the options, "Option Settlement Two" (or as referred to by the parties, Option 2W), is "the right to have a retirement allowance paid to a member until his or her death and thereafter to his or her beneficiary for life." (§ 21456.)

The decedent retired from the Department of Parks and Recreation in 2015. In her application for retirement, the decedent selected her retirement payment option as "Option 2W & Option 1 combined" and designated Starr as the Option 2W beneficiary.

### B. *The Dissolution of the Decedent's Domestic Partnership with Starr and Her Marriage to Thompson*

In August 2017, the decedent served Starr with a petition for dissolution filed with the Superior Court of Sonoma County. The record does not appear to include the petition. Starr did not file a response to the petition and the decedent requested entry of default in December 2017. The decedent filed a Judicial Council form declaration for default pursuant to Family Code section 2336. The decedent marked a box on the form stating, "There are no assets or debts to be disposed of by the court."

On December 22, 2017, based on the decedent's Family Code section 2336 declaration, the trial court entered a judgment of dissolution that would be effective February 16, 2018. The judgment stated that each partner's post-separation assets, earnings, and liabilities were their sole separate property or sole responsibility, but it did not mention any other assets.

A few months later, the decedent married Thompson. They remained married until the decedent's death in May 2020.

3

## C. Subsequent Efforts to Change the Decedent's Option 2W Beneficiary

In the years leading up to the decedent's passing, she made several attempts to remove Starr as the Option 2W beneficiary, and she provided CalPERS with their judgment of dissolution. CalPERS advised her that she could not modify her Option 2W beneficiary designation without either a "Release of Community Property Interest in Life Option Benefit" signed by Starr or a judgment awarding the decedent the total interest in CalPERS, as required by section 21454 of the PERL for modifying an Option 2W election for which a spouse was designated as the beneficiary. The decedent had no further communications with CalPERS regarding her Option 2W retirement benefits.

Shortly after the decedent's passing, Thompson wrote to CalPERS requesting that it reconsider its decision regarding the decedent's Option 2W beneficiary designation. She attached the judgment of dissolution and documents demonstrating the decedent's intention for Thompson to be the sole beneficiary of her retirement benefits. CalPERS denied her request.

Thompson appealed CalPERS's decision and requested an administrative hearing. After a hearing, an administrative law judge issued a proposed decision determining that "[n]one of the requirements were met to effectuate a change in beneficiary for the Option 2W lifetime monthly benefit." The decedent "did not submit any court documentation showing that she was awarded 100 percent of her retirement benefit[s] or a signed release" from Starr. The Board adopted this proposed decision.

Thompson then filed a petition for writ of mandate in the superior court and requested an order compelling the Board to vacate and set aside its decision and award Thompson the Option 2W monthly retirement benefits.

4

She contended the Board erred in adopting the administrative law judge's proposed decision because the judgment of dissolution "confirm[ed]" that the decedent retained "control" of her CalPERS retirement benefits.

The trial court denied the petition.[2]

## II. DISCUSSION

On appeal, Thompson contends the Board abused its discretion by refusing to replace Starr with Thompson as the decedent's Option 2W beneficiary based on an incorrect interpretation of the default judgment of dissolution, and thus the trial court erred in denying her petition for writ of mandate. In response, CalPERS argues the trial court did not err in denying Thompson's petition because substantial evidence supported the Board's conclusion that the decedent did not satisfy the statutory requirements to modify her Option 2W beneficiary designation. As explained below, CalPERS has the better argument.

### A. *Standard of Review*

Code of Civil Procedure section 1094.5, the administrative mandamus statute, provides for judicial review of administrative orders or decisions. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514.) The question presented by a petition for writ of administrative mandate is whether the agency or tribunal that issued the challenged decision "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by

---

[2] It does not appear a judgment was entered in this matter. Because the trial court entered an order fully disposing of the case, we will amend the order to include an appealable judgment. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 700.)

5

law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*)

" 'The scope of our review from a judgment on a petition for writ of mandate is the same as that of the trial court.' " (*Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1072.)  Thus, we review the agency's factual findings to determine whether such findings were supported by substantial evidence.[3] (*Doe v. University of Southern California, supra,* 28 Cal.App.5th at p. 34.)  Under this standard, we must uphold the agency's findings unless they are " ' "so lacking in evidentiary support as to render them unreasonable." ' " (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 989.)

We review questions of law de novo.  (*Prentice v. Board of Administration, supra,* 157 Cal.App.4th at p. 989.)  "However, where our review requires that we interpret the PERL or a [Cal]PERS regulation, the court accords great weight to [Cal]PERS interpretation." (*Ibid.*)

### B. Analysis

The trial court denied Thompson's petition for administrative mandamus because it found substantial evidence supported the Board's conclusion that the decedent failed to meet "the essential requirements in order to modify her life option beneficiary."  Those requirements, as set forth in the PERL, included obtaining either a release from Starr regarding her community property interest in CalPERS or a judgment awarding the

---

[3] The trial court implicitly rejected Thompson's argument that it should exercise its independent judgment in reviewing her petition.  (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 144 [independent judgment review is required whenever a "fundamental vested right" is at stake].)  Thompson has abandoned that argument on appeal as she does not refute Starr's claim that the substantial evidence standard applies here.  (See *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 32, fn. 11.)

decedent 100 percent interest in CalPERS. (See § 21454.) Further, citing *Henn v. Henn* (1980) 26 Cal.3d 323 (*Henn*), the court rejected Thompson's assertion the default judgment of dissolution awarded the decedent the total interest in CalPERS and " 'fully and finally' disposed" of Starr's interest in CalPERS such that it was res judicata of the issue. Thompson has not shown this was error.

Where an Option 2W beneficiary is a spouse, the member may revoke or modify the beneficiary designation after his or her retirement only under limited circumstances. (§§ 21454, 21456, 21492.) If the member's marriage with the nonmember spouse is dissolved and "the judgment *dividing the community property* awards the *total* interest in [CalPERS] to the member" (§§ 21456, italics added, 21454), the member may designate a different beneficiary or elect to have his or her retirement allowance adjusted back to the full, unmodified amount. (*In re Marriage of Sonne*, *supra*, 185 Cal.App.4th at p. 1569, fn. 3; §§ 21454, 21456, 21462, 21492.) Otherwise, the Option 2W election and beneficiary designation are irrevocable. (§§ 21454, 21456, 21492; *In re Marriage of Cooper* (2008) 160 Cal.App.4th 574, 579.)

Additionally, the PERL provides, "No [beneficiary] designation may be made in derogation of the community property share of any nonmember spouse . . . , unless the nonmember spouse has previously obtained an alternative order for division pursuant to Section 2610 of the Family Code." (§ 21490, subd. (b)(1).)

Thompson does not contest that at the time the decedent initiated the dissolution proceedings, Starr had a community property interest in the CalPERS benefits that accrued during her domestic partnership with the decedent and prior to their separation. (See *In re Marriage of Lehman* (1998)

18 Cal.4th 169, 177, 179 [community property includes retirement benefits accrued during marriage and before separation]; accord, *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1103–1104; see also Fam. Code, § 297.5, subd. (a) [domestic partners have the same rights as spouses].) Starr therefore owned a one-half interest in those benefits. (Fam. Code, § 751.)

There is also no dispute that when the decedent retired, she designated Starr as her Option 2W beneficiary, and that Starr qualified as the decedent's "spouse" for purposes of the relevant PERL provisions. (See § 21454; Fam. Code, § 297.5, subd. (a).) Starr never waived her community property interest in CalPERS, and it does not appear that either party obtained an alternative order for division under Family Code section 2610. The question then is whether the dissolution's "division of the community property award[ed] the total interest in [CalPERS] to the [decedent]." (§§ 21454, 21456.)

Although the default judgment of dissolution omitted the CalPERS benefits, Thompson insists the judgment "empowered [the decedent] to dispose of her own pension affairs after the divorce." Relying on the rule that a judgment by default is conclusive as to all issues tendered by the complaint (*Brown v. Brown* (1915) 170 Cal. 1, 5), Thompson contends that because the decedent alleged in the dissolution action that " 'there are no assets or debts to be disposed of by the court,' " and because Starr was served with the petition for dissolution but failed to assert a community property claim, Starr admitted by her default that there was no community property. According to Thompson, this means the judgment resulted in the decedent retaining total interest in CalPERS, and Starr was barred under the doctrine of res judicata from later asserting a claim to the CalPERS benefits.

8

In determining whether the judgment of dissolution awarded the decedent the total interest in CalPERS and was res judicata of the issue, *Henn*, *supra*, 26 Cal.3d 323 and its progeny are instructive. In *Henn*, the husband's pension was not mentioned in the pleadings or the judgment. (*Id.* at p. 327.) The California Supreme Court concluded the wife could maintain an action to establish her community property interest in the husband's pension because the pension was left unadjudicated by the judgment. The court reasoned, "Under California law, a spouse's entitlement to a share of the community property arises at the time that the property is acquired. [Citations.] That interest is not altered except by judicial decree or an agreement between the parties. Hence 'under settled principles of California community property law, "property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile." ' " (*Id.* at p. 330.)

The *Henn* court further held the doctrine of res judicata did not bar the division of the omitted pension in a separate action, because the spouse's interest in omitted community property was "independent of and predate[d] the original decree of dissolution and property settlement" and was "separate and distinct from her interest in the items of community property which were divided at the time of the dissolution." (*Henn*, *supra*, 26 Cal.3d at pp. 330, 329.) Since the omitted pension was not before the court which issued the final dissolution decree, the judgment of the court "cannot be said to have extinguished [the wife's] putative interest in that asset." (*Ibid.*)

In reaching its decision, the *Henn* court cited with approval cases upholding California's divisible divorce doctrine (*Henn*, *supra*, 26 Cal.3d at p. 330), under which the division of marital property need not be litigated in

9

a dissolution proceeding because it is collateral to the issue of the dissolution of marriage. (*Irwin v. Irwin* (1977) 69 Cal.App.3d 317, 320.) "Accordingly, it has long been the general rule that if the property of the marital partners is not mentioned or distributed by the interlocutory or final judgments dissolving the marriage, then the issue of property rights is not deemed to have been adjudicated in the marriage dissolution proceeding and may be made the subject of an independent action." (*Id.* at pp. 320–321.)

In a more recent case, *In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053 (*Huntley*), the appellate court held the wife was not precluded from seeking a division of certain community assets more than two years after entry of judgment, even though she had defaulted on a complaint that alleged the only community property was a different asset. There, "[t]he default judgment dissolved the marriage but did not mention any community property." (*Id.* at p. 1057.) In concluding the wife could seek a division of the omitted assets, the court first noted that since *Henn* was decided, the Legislature enacted Family Code section 2556 to "alleviate the burden of filing an entirely new action to divide" omitted assets by providing the court with " 'continuing jurisdiction' " to award community assets " 'that have not been previously adjudicated by a judgment in the proceeding,' "[4] (*Huntley*, at

---

[4] Family Code section 2556 provides in full: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

p. 1059, italics omitted, quoting Fam. Code, § 2556.) The court concluded the trial court erred in denying the wife's motion to divide omitted community assets because the "dissolution judgment did not divide—or even mention—any community property," and thus the community property "remained ' " 'subject to future litigation.' " ' " (*Huntley*, at p. 1061.)

*Henn* and *Huntley* stand for the proposition that a party's interest in an asset is not altered or extinguished in a dissolution proceeding where the asset was left unadjudicated by the judgment, regardless of the parties' allegations. Although a defendant's default may constitute an admission by that defendant as to the truth of allegations in the complaint, such admission is not equivalent to an adjudication. (*Estate of Williams* (1950) 36 Cal.2d 289, 296; see *Huntley*, *supra*, 10 Cal.App.5th at p. 1061.) "The controlling factor is whether the court divided the assets and not whether the issue was pleaded." (*Bowman v. Bowman* (1985) 171 Cal.App.3d 148, 157, disagreed with on another ground by *Estate of Logan* (1987) 191 Cal.App.3d 319, 323–325; see *Estate of Williams*, at pp. 296, 297 ["the court's silence cannot '. . . be construed as an adjudication that the property was community' "].)

Here, like the omitted assets in *Huntley* and *Henn*, the CalPERS benefits were left unadjudicated by the judgment of dissolution. The only property the judgment identified was the parties' post-separation assets; it did not mention any pre-separation assets, whether separate or community. (§ 21454.) Contrary to Thompson's assertion, the judgment did not expressly incorporate and find true the decedent's statement in her Family Code section 2336 declaration that there were "no assets or debts to be disposed of by the court."[5] Therefore, because the CalPERS benefits were not actually

---

[5] Although we need not reach the issue, we also agree with CalPERS that an allegation that there were "no assets or debts to be disposed of by the

11

litigated and divided, the default judgment of dissolution did not alter or extinguish Starr's community property interest in CalPERS (*Henn, supra,* 26 Cal.3d at p. 330), and the doctrine of res judicata does not bar Starr from asserting her rights to the CalPERS benefits (*Bowman v. Bowman, supra,* 171 Cal.App.3d at pp. 156–157).

Moreover, putting aside the judgment's silence on the CalPERS benefits, the absence of the petition for dissolution in the record is fatal to Thompson's argument that Starr admitted by her default there was no community property. Without the petition, we cannot determine the allegations to which Starr admitted by her default and whether those allegations concerned property rights. (See *Brown v. Brown, supra,* 170 Cal. at pp. 5, 6 [a defendant who defaults "is presumed to admit all the facts which are *well pleaded in the complaint,*" italics added]; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829, fn. 6 [" 'A default admits the material allegations of the complaint, and no more.' "].)

The cases cited by Thompson are inapposite because they do not concern unadjudicated community assets in a dissolution action. (See, e.g., *Murray v. Alaska Thompson Airlines, Inc.* (2010) 50 Cal.4th 860, 864; *Fitzgerald v. Herzer* (1947) 78 Cal.App.2d 127, 128–129.)

---

court" does not necessarily mean there was no community property at the time the decedent initiated the dissolution proceeding. As one court held in considering similar language, it is "plausible to argue that a petitioner . . . who does not request that property rights be determined as provided by law, merely is reserving the right to have the collateral matter resolved at some later proceeding." (*Irwin v. Irwin, supra,* 69 Cal.App.3d at p. 321.) In such circumstances, where a judgment is rendered on an ambiguous basis, a defendant will not be estopped from litigating their property rights in the future. (*Id.* at p. 322.) Thus, even if the judgment of dissolution had expressly incorporated the allegation that there were no assets or debts to be disposed of by the court, we would reach the same result.

Thompson cites *Rediker v. Rediker* (1950) 35 Cal.2d 796 for her contention the judgment of dissolution is res judicata not only of the status of the parties but also of all issues that "could have been" litigated in the action, including Starr's interest in CalPERS. (*Id.* at p. 801.) However, *Rediker* also did not involve unadjudicated assets, and this argument is contrary to *Henn* and Family Code section 2556. (See *In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 691–692 & fn. 35 [rejecting a similar argument].)

Finally, Thompson appears to argue that we should disregard section 21454's express requirements to modify an Option 2W election and beneficiary designation, given the evidence of the decedent's intent to change her Option 2W beneficiary to Thompson. The authority she cites does not support her position.

In *Watenpaugh v. State Teachers' Retirement System* (1959) 51 Cal.2d 675 (*Watenpaugh*), the court considered a teacher's designation of beneficiary under the State Teachers' Retirement System that was delivered to the system only after the teacher's death. (*Id.* at pp. 677–678.) The relevant statute required that a member who wished to change a beneficiary do so " 'by a written instrument duly executed and filed with the board,' " though it did not expressly require that the teacher file the form during his lifetime. (*Id.* at p. 681.) In holding the designation should be given effect, the court said: "The purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice. A second purpose, no doubt, is to provide a method of ascertaining the desire and intent of the member with reference to the payment of death benefits. The statute should be construed to give effect to an executed designation when there is a clear manifestation of intent by

13

the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system." (*Ibid.*)

"The *Watenpaugh* rule is consistent with the more generally applied substantial compliance doctrine," where " ' "technical deviations" ' " are excused upon compliance with " ' "all matters of substance." ' " (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 701.) Thus, the court in *Wicktor v. County of Los Angeles* (1960) 177 Cal.App.2d 390, relying in part on *Watenpaugh*, disregarded an employee's failure to comply with filing "technicalities" where the evidence showed a clear intent to change a beneficiary. (*Id.* at pp. 398–404.)

Here, we are dealing with more than just noncompliance with technical filing requirements. In none of the cases cited by Thompson would the change of beneficiary subject the retirement system to the possibility "of being called upon to pay twice," which would be the case here if the Board were to grant the decedent's request to change her Option 2W beneficiary to Thompson without accounting for Starr's community share of the benefits. (*Watenpaugh, supra,* 51 Cal.2d at pp. 681, 677; see *Wicktor v. County of Los Angeles, supra,* 177 Cal.App.2d at pp. 397, 404; *Gallaher v. State Teachers' Retirement System* (1965) 237 Cal.App.2d 510, 513.) Additionally, the relevant PERL statutes reflect a legislative intent to ensure members cannot change a beneficiary designation in "derogation of the community property share" of nonmember spouses. (§§ 21490, subd. (b)(1), 21454, 21456, 21492.) Were we to hold that the decedent's intent to change her beneficiary prevails even absent an adjudication of Starr's interest in CalPERS, we would effectively rewrite the statutes in a manner contrary to legislative intent, which we cannot do. (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

14

In sum, the Board's decision to deny Thompson's request to change the decedent's Option 2W beneficiary designation is supported by substantial evidence, the relevant case law, and the PERL. CalPERS has a duty to follow the law and cannot provide a member with a right not otherwise available under the PERL. (*City of Pleasanton v. Board of Administration* (2012) 211 Cal.App.4th 522, 544.) As such, the Board was well within its discretion to deny Thompson's request because the decedent did not satisfy the requirement in section 21454 to obtain an order awarding her the total interest in CalPERS. We therefore affirm the order denying Thompson's petition for administrative mandamus.[6]

## III. DISPOSITION

The trial court's October 5, 2023 order is converted into a judgment denying Thompson's petition for writ of administrative mandamus. As amended, the judgment is affirmed. Respondent shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

---

[6] We need not and do not reach CalPERS's additional arguments that the judgment of dissolution did not comply with section 21290 and that the decedent failed to complete the required forms for changing her Option 2W beneficiary.

15

LANGHORNE WILSON, J.


WE CONCUR:


BANKE, ACTING P. J.


HILL, J.*


A169479
*Thompson v. Board of Administration for CalPERS*

---

\* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.