[No. A032493. First Dist., Div. Five. Apr. 23, 1987.]

Estate of WILLIAM OWEN LOGAN, Deceased.
FRANCES JEANNE LOGAN PRITCHARD, Petitioner and Appellant,
v.
DOROTHY LOGAN, as Executrix, etc., Objector and Respondent;
AMERICAN AIRLINES, INC., Claimant and Respondent.

**[Opinion certified for partial publication.†]**

---

†Part II is not ordered published, as it does not meet the standards for publication contained in California Rules of Court, rule 976(b).

320

COUNSEL

Richard Sherman, De Goff & Sherman, Dena A. Kleeman and Hanson & Norris for Petitioner and Appellant.

David S. Maguire and Germino, Layne, Brodie, Runte & Maguire for Objector and Respondent.

No appearance for Claimant and Respondent.

OPINION

KING, J.—In this case we hold that a term life insurance policy upon the life of one spouse is not divisible as community property under the Family Law Act, even though premiums for the policy before separation were paid with community property funds. An exception will arise if the insured spouse becomes uninsurable during the term paid with community funds, since the right to continued coverage upon payment of future premiums is a valuable community property asset for one who is uninsurable. If the insured dies during the term paid with community funds, the proceeds of the policy are community property. When premiums for a new term have been paid from postseparation separate property earnings and the insured remains insurable, the policy must be confirmed to the insured as separate property.

Frances Jeanne Logan (now Pritchard, hereinafter Jeanne) appeals from orders denying her (1) any community property interest in the proceeds of her former husband's employment-related term life insurance policy, and (2) a community share in his pension-related death benefits.[1]

Jeanne and William Logan married in 1947 and separated in 1966. William worked for American Airlines which deducted premiums for a company-sponsored group term life insurance plan from his salary. Their 1968 interlocutory judgment of divorce ordered William to maintain this life insurance with the couple's minor children as beneficiaries until they reached the age of majority.

When William died in 1984, the children of his marriage to Jeanne were adults. Jeanne brought this action seeking a portion of the proceeds from William's term life insurance. She appeals the trial court's determination that she had no community property interest in these proceeds.

---

[1]Since the issue of pension-related death benefits is discussed in the portion of this opinion which is unpublished, we do not recite the facts related to that issue.

I

■■■■■ The trial court denied Jeanne's request for a 39.583 percent share[2] in the proceeds of William's American Airlines term life insurance policy because "I don't believe term policies are community property," explicitly rejecting contrary authority in *Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148 [217 Cal.Rptr. 174] and *In re Marriage of Gonzalez* (1985) 168 Cal.App.3d 1021 [214 Cal.Rptr. 634], and following the holding in *In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464 [194 Cal.Rptr. 237].[3] The two appellate court decisions actually in conflict over the issue of whether term life insurance is a community property asset are *Lorenz* and *Gonzalez,* since *Bowman,* without detailed analysis, was decided by the same division which had decided *Gonzalez* a few months earlier.

The first case to consider a closely related issue was *Biltoft* v. *Wootten* (1979) 96 Cal.App.3d 58 [157 Cal.Rptr. 581] which involved a contributory group term life insurance policy available through the insured's employment and paid with biweekly deductions from his pay. After separation, but before dissolution, decedent had changed the beneficiary under the policy from his spouse to his children. On appeal the issue was whether the proceeds were community or separate property. The court held the proceeds were part community and part separate according to the proportion that the amount of premiums paid with community property bore to the total amount of premiums paid. The reasoning underlying the decision was that each premium payment did not purchase a new contract of insurance because, if the decedent had tried to purchase the policy after separation, "it is unlikely that he would have been able to obtain the same coverage for the same premium on the same terms of eligibility" and "The decedent's community efforts for the 20 years prior to the separation maintained the policy in force." (*Id.,* at p. 61.) The court's opinion does not indicate what evidence, if any, was presented to support the conclusion that it was

---

[2]In a 1975 proceeding the trial court had amended the interlocutory judgment to provide that Jeanne's community property interest in William's pension was 39.583 percent. Jeanne claimed the same interest in his term life insurance proceeds in these proceedings.

[3]The trial court, as an alternative, also ruled that the interlocutory judgment of divorce had awarded William the term life insurance policy "by innuendo" when it ordered him to retain his children as beneficiaries under the policy until they reached majority. One problem with this reasoning is that it has long been settled that naming other beneficiaries cannot destroy the community interest, if any, in life insurance purchased with earnings during marriage. (See *New York L. Ins. C.* v. *Bank of Italy* (1923) 60 Cal.App. 602, 605 [214 P.61].) At the time of the entry of the interlocutory judgment of divorce in 1968, no California decision had ruled that term life insurance was community property divisible upon divorce. It is also true that in 1968 there was no requirement for equal division of community property. In any event, since we find Jeanne had no community property interest in William's term life insurance policy, we need not consider the trial court's alternative ruling.

"unlikely" decedent could have purchased the identical policy after separation.

*Lorenz* distinguished *Biltoft* as a case dealing with the right to proceeds from term insurance upon the death of the insured spouse prior to dissolution. The *Lorenz* analysis was that many fringe benefits of employment such as use of an employer's health club facilities, reduced prices at the company cafeteria or discounts on purchases of an employer's products were of value to an employee, but did not constitute community property divisible upon dissolution. *Lorenz* held that although the benefits of term life insurance have a value, until those benefits become payable, the policy itself is worthless and is not divisible as community property.

The *Gonzalez* court concluded, "*Lorenz* is simply incorrect in the assertion that assets such as term life insurance and accrued vacation time have no economic value . . . ." (*In re Marriage of Gonzalez, supra,* 168 Cal.App.3d at p. 1024.) *Gonzalez* reasoned that the spouses had acquired rights because the policy had been obtained during marriage with community funds. The court concluded, with no indication what evidence existed in the record to support its conclusion, "Undoubtedly the premium rate was very favorable, and pursuant to federal statute, husband was not required to establish medical eligibility for coverage. (38 U.S.C. § 777(e).) We are confident the same policy acquired today, assuming husband is still insurable, would cost considerably more." (*Id.,* at p. 1026.)[4]

To say that "[t]he *Gonzalez* decision has been subject to criticism by members of the Bar" (Cal. Family Law Service, § 23:138) is putting it mildly. In addition to placing another roadblock in the way of simplified dissolution of marriage, the requirements of this decision would also significantly increase the cost of dissolution by requiring each side to employ expert witnesses to testify to the value of term life insurance policies. We suspect that in most cases the cost to the parties of expert witnesses would be greater than the value of the term life insurance policy. We believe the *Gonzalez*

---

[4]In the alternative, the *Gonzalez* court approved the award of a term life insurance policy on husband's life, obtained by him through his employment, to his wife as security for spousal support, even though the trial court had not awarded spousal support but simply reserved jurisdiction to do so for both parties. We must acknowledge difficulty in understanding the *Gonzalez* court's alternative ground, because it has mixed the issue of division of community property with the wholly unrelated issue of security for payment of spousal support. "The court may order the party required to make the payment of support to give reasonable security therefor." (Civ. Code, § 4801, subd. (a).) Ignoring the fact that Mr. Gonzalez was not ordered to pay any spousal support, to constitute security for his payment of spousal support, the term policy would have to belong to him. We know of no authority to violate Civil Code section 4800's requirement for equal division of community property by awarding one party ownership of a community asset as security for future spousal support payable by the other party.

and *Bowman* decisions result from an erroneous analysis of the nature of term life insurance policies.

■ Simply stated, "Term insurance is life insurance written for a fixed or specified term. To reflect the increasing risk of death as the insured increases in age, term insurance policies either have increasing premiums from year to year or provide decreasing death benefits paid on the insured's death. At the expiration of the term of years, the policy expires without retaining cash value. One advantage of term insurance is its cost. Since it does not retain cash value, the premium cost for comparable coverage is less than it is with whole life insurance. Some forms of term insurance may be converted into permanent or whole life policies or may be automatically renewable at regular intervals at a higher premium." (5A Markey, Cal. Family Law, Practice and Procedure, § 122.03[2][b].) Term life insurance policies typically contain two elements, dollar coverage payable in the event of death and a right to renewal for future terms without proof of current medical eligibility.

As to the element of dollar coverage, term life insurance simply provides for protection against the contingency of the death of the insured during the term of the policy. If the premium for the next term is not paid, the policy is not renewed.[5] In this respect, it is the same as automobile or health insurance. Thus when the premium is paid with community funds, the policy is community property for the period covered by that premium. This is true whether the premium is paid as a fringe benefit by the insured's employer, paid for by the insured, or a combination of both. The policy provides dollar coverage only for the specific term for which the premium was paid. Thus, as to dollar coverage, term life insurance upon which premiums were paid from community funds has no value after the term has ended without the insured having become deceased.

With respect to the element of the right to renew coverage for additional terms, term life insurance has either a significant value or no value at all. The right to renewal upon payment of the premium for the next term is significant because the insured possesses the right even if he or she has become uninsurable in the meantime. Usually, as Markey points outs, policies require increasing premiums and/or decreasing amounts of coverage as the insured gets older. If, as is usually the case, the insured is insurable at the end of the term purchased with community funds, the renewed policy, that is, the term policy purchased by the payment of the premium with postseparation earnings which are separate property pursuant to Civil Code

---

[5]For the purpose of this point, it is irrelevant that such policies may provide for a limited extension of the period coverage in the event of nonpayment of premiums, a so-called "grace" period.

section 5118, or by the employer as a postseparation fringe benefit, changes character from community to separate property.

At this time, if the insured is insurable, the community has fully received everything it bargained for, dollar protection against the contingency of death during the term paid for with community funds and the right to renew without proof of insurability for an additional term. If the insured remains insurable, the right to renew the policy has no value since the insured could obtain comparable term insurance for a comparable price in the open market. The community having received everything it bargained for, there is no longer any community property interest in the policy and no community asset left to divide.[6]

We believe the courts in *Biltoft, Gonzalez* and *Bowman* came to incorrect conclusions because they made unsupported and erroneous assumptions about the nature of term life insurance and the availability to the insured of other comparable insurance. In *Biltoft,* the court assumed "it is unlikely that [decedent] would have been able to obtain the same coverage for the same premium on the same terms of eligibility." (*Biltoft* v. *Wootten, supra,* 96 Cal.App.3d at p. 61.) In *Gonzalez* the court assumed "[u]ndoubtedly the premium rate was very favorable" and "husband was not required to establish medical eligibility for coverage," and concluded, "We are confident the same policy today, assuming husband is still insurable, would cost considerably more." (*In re Marriage of Gonzalez, supra,* 168 Cal.App.3d at p. 1026.) To this we ask, where was the evidence to support these assumptions? For all we know, by the time of the appeal, Mr. Gonzalez or Mr. Bowman might well have changed jobs and gotten new employment in the private sector which provided greater term life insurance coverage paid for by the employer. Such coverage is usually available even if the employed might be otherwise uninsurable, since new employees are usually covered under the employer's group life insurance plans without evidence of insurability. The group insurance with the former employers would have ceased when the insured changed employment.

██ We believe the correct rule to be that term life insurance covering a spouse who remains insurable is community property only for the period beyond the date of separation for which community funds were used to pay the premium. If the insured dies during that period the proceeds of the policy are fully community. Otherwise, the insured remaining insurable, a term policy does not constitute a divisible community asset since the policy is of

---

[6]Some term policies, as in the instant case, provide for a waiver of premium in the event of disability, or for a right to convert to whole life. These options do not affect the community property interest, if any, since they are only options in the policy upon which the premium is computed.

no value and the community has fully received what it bargained for.[7] If the insured becomes uninsurable during the term paid with community funds, then the right to future insurance coverage which cannot otherwise be purchased is a community asset to be divided upon dissolution. We need not discuss how this right might be valued[8] because we determine Jeanne has no community interest in William's term life insurance policy since he was insurable when he commenced paying the premiums with his postseparation property earnings.

## II*

. . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is modified to award Frances Jeanne Logan Pritchard, without the offset ordered by the trial court, 39.583 percent of William Owen Logan's death benefit, plus accrued interest, from his employment with American Airlines, Inc., and, as modified, is affirmed. The parties shall bear their own costs on appeal.

---

[7]The only decision we have found in another community property state agrees with this conclusion. (See *Aetna Life Ins. Co.* v. *Wadsworth* (1984) 102 Wn.2d 652 [689 P.2d 46].)

[8]We do not minimize the difficulty of valuing the right of an insured who is no longer insurable to obtain continued coverage. The need to value this right will rarely arise since, as here, the insured will usually be insurable at the conclusion of the term paid with community property funds. An uninsurable person's right to continued insurance coverage is a valuable right and expert testimony can undoubtedly establish its value. It has been suggested that "in order to properly determine the value of a term life insurance policy, the trial court might examine several factors, such as the face value of the policy, the amount of the premium, the life expectancy of the insured, whether the policy is convertible to whole life insurance, replacement cost, and when, if ever, the policy 'vests' and is deemed fully paid." (*In re Marriage of Gonzalez, supra,* 168 Cal.App.3d at p. 1026.) We have difficulty understanding how these factors can be used to value term insurance. Some of them would not seem relevant to establishing value. Replacement cost would seem to be irrelevant, since for one who is uninsurable, replacement would not be possible. The amount of the premium is a function of the age of the insured and the amount of coverage, but again, this seems irrelevant if coverage is not available because of uninsurability. What the *Gonzalez* court meant by "vests" is particularly puzzling since we are unaware that term life insurance ever vests and is deemed fully paid. Convertibility, as previously discussed, is an added feature of the policy which has been considered in fixing the premium, and is simply a right to obtain whole life coverage without current medical eligibility, with the premium for the whole life policy being the same as for any other insured of the same age seeking the same amount of whole life coverage. It may be that expert testimony can utilize these factors to value the right to continued insurance coverage for one who is no longer insurable. We are not so sure, and suspect a better measure might be the actuarial present value of the proceeds payable under the policy, considering the shortened life expectancy resulting from whatever has caused the uninsurability.

*See footnote, *ante,* page 319.

Low, P. J., concurred.

**HANING, J.**—I concur in the result. The reference to an exception in the event the insured party becomes uninsurable is not an issue before us, has not been fully briefed and is not ripe for decision under the present circumstances. Hence, I express no opinion thereon.

A petition for a rehearing was denied May 13, 1987.