[No. C011020. Third Dist. Apr. 8, 1992.]

In re the Marriage of BARBARA ANN and DANIEL F. SPENGLER, SR.
BARBARA ANN SPENGLER, Respondent, v.
ROSE G. SPENGLER, Appellant.

**COUNSEL**

Canelo, Hansen & Wilson and Charles Rayburn Wilson for Appellant.

C. Alexandre Barbera for Respondent.

**OPINION**

**SIMS, J.**—In this postjudgment marital dissolution proceeding, petitioner below, Barbara Ann Spengler (wife), filed a complaint in joinder against claimant Rose G. Spengler (beneficiary) in which wife claimed a community property interest in proceeds received by beneficiary from a term life insurance policy upon the death of wife's former husband, Daniel F. Spengler, Sr. (husband). The trial court found the policy was an omitted community asset (Civ. Code, § 4353[1]) and entered judgment awarding half the proceeds to wife. ■■ The issue on appeal is whether an employment-related group term life insurance policy is community property subject to division in a marital dissolution. The narrower question is whether such policy's provision of a right to renewed coverage without proof of current insurability is a valuable community asset subject to division in a marital dissolution where the insured spouse becomes uninsurable during the marriage, such that the existing policy provides future coverage the insured spouse could not otherwise obtain. We will conclude the employment-related group term life insurance policy is not a community property asset beyond

---

[1]Undesignated statutory references are to the Civil Code.

Section 4353 provides: "In any action for legal separation or dissolution or annulment of a marriage, the court has continuing jurisdiction to award community property or community debts to the parties that has not been previously adjudicated by a judgment therein. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community asset or debt omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community asset or debt, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or debt."

expiration of the term acquired with community efforts, and this result is unaffected by uninsurability if the insured employee has no enforceable right to compel the employer to renew the policy. We will therefore reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Wife and husband were married in 1967.

In 1980, husband began working for Mid-Valley Dairy Company. The employer provided various life insurance benefits to employees, apparently as fringe benefits. The policy at issue in this case was a group term life insurance plan that insured employees for the amount of their salary up to $180,000. The insured group was large enough so that employees were not required to undergo a physical examination or submit proof of insurability. This coverage continued, though underwritten by different insurers, until husband's death.

In 1982, husband was diagnosed with prostate cancer. According to testimony of an insurance expert, a person in husband's situation would have been "uninsurable," i.e., unable to obtain individual life insurance.

Husband and wife separated in 1986. The marriage was dissolved by bifurcated judgment from which wife appealed. In 1989, husband and wife negotiated a settlement, which was formalized in a "Judgment As To Remaining Issues and Dissolution of Marriage." Although the parties had agreed that wife was to receive half of husband's life insurance proceeds, the judgment omitted the policy that is at issue in this case, because husband incorrectly represented at the settlement conference that he no longer had that coverage.

After dissolution, the insurance coverage continued under a policy issued by Hartford Life Insurance Company in September 1989. That same month, husband married Rose Spengler and named her as his beneficiary under the policy.

Three months later, husband died.

Beneficiary received approximately $100,000 as designated beneficiary of the subject policy. Wife filed a complaint in joinder, seeking half the proceeds as a community asset. Although the complaint alleged misrepresentations by husband and named the estate administrator as a party, wife stipulated "That any claims pertaining to life insurance proceeds on the life

of Daniel F. Spengler Sr. heretofore received by Rose G. Spengler, shall be made against Rose G. Spengler, and not against the Administrator nor any assets of the estate of Daniel F. Spengler, Sr."

Following a bench trial, the trial court concluded the insurance policy was community property and was an omitted asset under section 4353 (fn. 1, *ante*). The court entered judgment in favor of wife for one-half of the policy proceeds.

## DISCUSSION

Beneficiary contends a term life insurance policy is not a community asset subject to division under the Family Law Act and does not become a community asset by virtue of the insured spouse becoming uninsurable during the marriage. We agree.

Preliminarily, we note that we disregard various counterarguments by wife. Thus, wife raises points relating to husband's misrepresentation that he no longer had this coverage and misconduct in changing beneficiaries. We agree with beneficiary that these facts are immaterial, because wife waived any claims against the estate and proceeded on the sole theory that the policy was a community asset. Wife also contends the judgment is sustainable because the trial court could have ordered at the time of dissolution that the entire policy be maintained with her as beneficiary in order to protect her spousal support rights, under section 4801.4.[2] We again agree with beneficiary that this argument cannot be raised for the first time in this appeal. We review what the trial court did, not what it might have done.

We now turn to the merits.

The Courts of Appeal are split on the issue of whether a term life insurance policy is community property. The Second District has held that a term life insurance policy, having no cash surrender value, is not "property" within the meaning of the community property laws. (*In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464, 467 [194 Cal.Rptr. 237].) The Fourth

---

[2]Section 4801.4 provides in part: "For the purposes of Section 4801 [spousal support], where it is just and reasonable in view of the circumstances of the respective parties, the court, in determining the needs of a supported spouse, may include an amount sufficient to purchase an annuity for the supported spouse or to maintain insurance for the benefit of the supported spouse on the life of the spouse required to make the payment of support, or may require the spouse required to make the payment of support to establish a trust to provide for the support of the supported spouse, so that the supported spouse will not be left without means for support in the event that the order for support is terminated by the death of the party required to make the payment of support. . . ."

District has held that, even though term life insurance lacks cash surrender value, it may have replacement value subject to community property division where insurability is lessened by advancing age or declining health of the insured spouse. (E.g., *In re Marriage of Gonzalez* (1985) 168 Cal.App.3d 1021, 1025 [214 Cal.Rptr. 634 [54 A.L.R.4th 1195].) The First District has held that, as long as the insured spouse remains insurable, term life insurance has no divisible community property value upon expiration of the term acquired with community funds/efforts. (*Estate of Logan* (1987) 191 Cal.App.3d 319, 325 [236 Cal.Rptr. 368].) However, according to dictum in *Logan*, if the insured becomes uninsurable during the marriage, the policy's renewal rights to continued coverage that cannot otherwise be purchased is a community asset to be divided upon dissolution. (*Id.* at p. 326.) As will appear, we agree with *Logan*'s holding but disagree with its dictum.

*Logan, supra*, 191 Cal.App.3d 319 was an action against an estate, in which a former wife sought a share in the proceeds of her deceased former husband's employment-related term life insurance policy, for which preseparation premium payments had been paid with community funds. Because *Logan* contains a cogent analysis of the issue and relevant case law, we quote extensively from that decision:

"The first case to consider a closely related issue was *Biltoft* v. *Wootten* (1979) 96 Cal.App.3d 58 [157 Cal.Rptr. 581] [] which involved a contributory group term life insurance policy available through the insured's employment and paid with biweekly deductions from his pay. After separation, but before dissolution, decedent had changed the beneficiary under the policy from his spouse to his children. On appeal the issue was whether the proceeds were community or separate property. The court held the proceeds were part community and part separate according to the proportion that the amount of premiums paid with community property bore to the total amount of premiums paid. The reasoning underlying the decision was that each premium payment did not purchase a new contract of insurance because, if the decedent had tried to purchase the policy after separation, 'it is unlikely that he would have been able to obtain the same coverage for the same premium on the same terms of eligibility' and 'The decedent's community efforts for the 20 years prior to the separation maintained the policy in force.' (*Id.* at p. 61.) The court's opinion does not indicate what evidence, if any, was presented to support the conclusion that it was 'unlikely' decedent could have purchased the identical policy after separation.

"*Lorenz* [*supra*, 146 Cal.App.3d 464] distinguished *Biltoft* as a case dealing with the right to proceeds from term insurance upon the death of the

insured spouse prior to dissolution.[3] The *Lorenz* analysis was that many fringe benefits of employment such as use of an employer's health club facilities, reduced prices at the company cafeteria or discounts on purchases of an employer's products were of value to an employee, but did not constitute community property divisible upon dissolution. *Lorenz* held that although the benefits of term life insurance have a value, until those benefits become payable, the policy itself is worthless and is not divisible as community property.

"The *Gonzalez* [*supra*, 168 Cal.App.3d 1021] court concluded, '*Lorenz* is simply incorrect in the assertion that assets such as term life insurance and accrued vacation time have no economic value . . . .' [Citation.] *Gonzalez* reasoned that the spouses had acquired rights because the policy had been obtained during marriage with community funds. The court concluded, with no indication what evidence existed in the record to support its conclusion, 'Undoubtedly the premium rate was very favorable, and pursuant to federal statute, husband was not required to establish medical eligibility for coverage. [Citation.] We are confident the same policy acquired today, assuming husband is still insurable, would cost considerably more.' [Citation.]

"To say that '[t]he *Gonzalez* decision has been subject to criticism by members of the Bar' (Cal. Family Law Service, § 23:138) is putting it mildly. In addition to placing another roadblock in the way of simplified dissolution of marriage, the requirements of this decision would also significantly increase the cost of dissolution by requiring each side to employ expert witnesses to testify to the value of term life insurance policies. We suspect that in most cases the cost to the parties of expert witnesses would be greater than the value of the term life insurance policy. We believe the *Gonzalez* and *Bowman* decisions result from an erroneous analysis of the nature of term life insurance policies." (*Logan*, *supra*, 191 Cal.App.3d at pp. 322-324, fn. omitted.)

The *Logan* court explained the nature of term life insurance policies as follows:

■ " 'Term insurance is life insurance written for a fixed or specified term. To reflect the increasing risk of death as the insured increases in age, term insurance policies either have increasing premiums from year to year or provide decreasing death benefits paid on the insured's death. At the expiration of the term of years, the policy expires without retaining cash value.

---

[3]Although *Biltoft* was distributing proceeds, the court noted that the court in a dissolution action need not reserve jurisdiction until the policyholder dies but could determine value of the policy in the same way it determines value of other community property rights. (*Biltoft* v. *Wootten* (1979) 96 Cal.App.3d 58, 62 [157 Cal.Rptr. 581].)

One advantage of term insurance is its cost. Since it does not retain cash value, the premium cost for comparable coverage is less than it is with whole life insurance. Some forms of term insurance may be converted into permanent or whole life policies or may be automatically renewable at regular intervals at a higher premium.' (5A Markey, Cal. Family Law, Practice and Procedure, § 122.03[2][b].) Term life insurance policies typically contain two elements, dollar coverage payable in the event of death and a right to renewal for future terms without proof of current medical eligibility.

"As to the element of dollar coverage, term life insurance simply provides for protection against the contingency of the death of the insured during the term of the policy. If the premium for the next term is not paid, the policy is not renewed. In this respect, it is the same as automobile or health insurance. Thus when the premium is paid with community funds, the policy is community property for the period covered by that premium. This is true whether the premium is paid as a fringe benefit by the insured's employer, paid for by the insured, or a combination of both. The policy provides dollar coverage only for the specific term for which the premium was paid. Thus, as to dollar coverage, term life insurance upon which premiums were paid from community funds has no value after the term has ended without the insured having become deceased.

"With respect to the element of the right to renew coverage for additional terms, term life insurance has either a significant value or no value at all. The right to renewal upon payment of the premium for the next term is significant because the insured possesses the right even if he or she has become uninsurable in the meantime. Usually, as Markey points out, policies require increasing premiums and/or decreasing amounts of coverage as the insured gets older. If, as is usually the case, the insured is insurable at the end of the term purchased with community funds, the renewed policy, that is, the term policy purchased by the payment of the premium with postseparation earnings which are separate property pursuant to Civil Code section 5118,[4] or by the employer as a postseparation fringe benefit, changes character from community to separate property.

"At this time, if the insured is insurable, the community has fully received everything it bargained for, dollar protection against the contingency of death during the term paid for with community funds and the right to renew without proof of insurability for an additional term. If the insured remains insurable, the right to renew the policy has no value since the insured could

---

[4] Civil Code section 5118 provides: "The earnings and accumulations of a spouse and the minor children living with, or in the custody of, the spouse, while living separate and apart from the other spouse, are the separate property of the spouse."

obtain comparable term insurance for a comparable price in the open market. The community having received everything it bargained for, there is no longer any community property interest in the policy and no community asset left to divide.

"We believe the courts in *Biltoft, Gonzalez* and *Bowman*[5] came to incorrect conclusions because they made unsupported and erroneous assumptions about the nature of term life insurance and the availability to the insured of other comparable insurance. In *Biltoft*, the court assumed 'it is unlikely that [decedent] would have been able to obtain the same coverage for the same premium on the same terms of eligibility.' (*Biltoft* v. *Wootten, supra*, 96 Cal.App.3d at p. 61.) In *Gonzalez* the court assumed '[u]ndoubtedly the premium rate was very favorable' and 'husband was not required to establish medical eligibility for coverage,' and concluded, 'We are confident the same policy today, assuming husband is still insurable, would cost considerably more.' (*In re Marriage of Gonzalez, supra*, 168 Cal.App.3d at p. 1026.) To this we ask, where was the evidence to support these assumptions? For all we know, by the time of the appeal, Mr. Gonzalez or Mr. Bowman might well have changed jobs and gotten new employment in the private sector which provided greater term life insurance coverage paid for by the employer. Such coverage is usually available even if the employed might be otherwise uninsurable, since new employees are usually covered under the employer's group life insurance plans without evidence of insurability. The group insurance with the former employers would have ceased when the insured changed employment.

"We believe the correct rule to be that term life insurance covering a spouse who remains insurable is community property only for the period beyond the date of separation for which community funds were used to pay the premium. If the insured dies during that period the proceeds of the policy are fully community. Otherwise, the insured remaining insurable, a term policy does not constitute a divisible community asset since the policy is of no value and the community has fully received what it bargained for. If the insured becomes uninsurable during the term paid with community funds, then the right to future insurance coverage which cannot otherwise be purchased is a community asset to be divided upon dissolution." (*Logan, supra*, 191 Cal.App.3d at pp. 324-326, fns. omitted.)

A concurring justice in *Logan* noted that the dictum regarding an exception in the event the insured spouse becomes uninsurable was an issue that had not been fully briefed and was not ripe for decision. (*Logan, supra*, 191 Cal.App.3d at p. 327, conc. opn. of Haning, J.)

---

[5]*Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148 [217 Cal.Rptr. 174] was decided by the same court that decided *Gonzalez* and simply followed the *Gonzalez* holding.

We agree with *Logan*'s holding that an employment-related term life insurance policy is not a community property asset after expiration of the term acquired with community funds/efforts. We respectfully disagree, however, with *Logan*'s dictum finding an exception where the insured spouse becomes uninsurable during the marriage.

In our view, the fallacy of classifying the renewal right in this case as community property is that it is based on the faulty premise that during the marriage husband was able to acquire a policy that could not thereafter be taken away. But that is not the case. The right to continued insurance protection under an employment-related insurance policy is not inexorably earned by the investment of community funds/efforts in acquiring the policy. It depends on the insured's continuing to work at that employment *and* on the employer's continuing to provide the group insurance plan.

In order to qualify as community property, an asset or interest must be "property" within the meaning of the community property laws. (*Lorenz, supra*, 146 Cal.App.3d at p. 467.) Thus, the question is whether the isolated interest in this case—the renewal right—is "property" as opposed to a mere expectancy. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 846, fn. 8 [126 Cal.Rptr. 633 [544 P.2d 561 [94 A.L.R.3d 164], citing § 697 [contingent future interest is property] and § 700 [expectancy is not to be deemed an interest of any kind].)

We recognize that "Fringe benefits[6] are not a gift from the employer but are earned by the employee as part of the compensation for services. [Citations.] Thus fringe benefits such as . . . employer-paid life insurance . . . are community property to the extent they are earned by the time, skill and effort of a spouse during marriage. [Citations.] Fringe benefits consisting of *contractual rights* to future benefits after separation, though unvested and unmatured, are property subject to allocation between community and separate interests at the time of dissolution. [Citation.]" (*In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1226 [225 Cal.Rptr. 234], italics added [community interest in qualified stock options], citing inter alia *Polk v. Polk* (1964) 228 Cal.App.2d 763, 781 [39 Cal.Rptr. 824] [community interest in insurance proceeds].)

The fact that a benefit is subject to contingencies does not preclude a finding of a divisible property interest. (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 846, fn. 8.) A contract right, though contingent, may be a

---

[6] The parties cite no evidence as to who paid the premiums on the policy, but the stipulated facts state the employer "provided" the insurance benefits, and wife does not dispute beneficiary's characterization of the policy as a fringe benefit.

valuable property right if it is "subject only to conditions within the control of the [holder of the right]." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 745-746 [552 P.2d 1169] [right to withdraw from partnership]; see also *In re Marriage of Skaden* (1977) 19 Cal.3d 679 [566 P.2d 249] [employment termination benefits contained in written contract were property interest, though extent of benefits was contingent on compliance with contract conditions]; see also cases cited in *In re Marriage of Kilbourne* (1991) 232 Cal.App.3d 1518, 1524, fn. 5 [284 Cal.Rptr. 201] [that husband's right to receive fees from law practice was contingent on future events did not negate status as community assets].)

■ To be distinguished from the *contract rights* referenced in the preceding paragraphs is a "mere expectancy," which does not constitute a property interest under community property laws. Thus, our Supreme Court has indicated that a benefit contingent on continued employment may or may not be "property" subject to the community property laws depending on whether it is a mere expectancy or a contract right. (*In re Marriage of Brown, supra,* 15 Cal.3d 838 [nonvested pension rights are property].) "The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent [citations], or a beneficiary designated by a living insured who has a right to change the beneficiary [citations]. . . . [T]he defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence." (*Id.* at pp. 844-845, original italics, fn. omitted.) *Brown* concluded that nonvested pension rights, though contingent on continued employment, are not mere expectancies but represent a form of deferred compensation for services rendered—a contractual right derived from the employment contract. "Since a contractual right is not an expectancy but a chose in action, a form of property [citations], . . . an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract." (*Ibid.*)

■ Applying the above principles, we conclude that the isolated interest in this case—the renewal right—was a mere expectancy rather than a contingent property interest. We emphasize that the interest we are examining is *only* the renewal right, *not* the coverage element of the policy. The renewal right depended not only on continued employment by husband but also on continued offering of the plan by the employer. Although there was no testimony about the specifics of husband's employment terms, the insurance expert testified that any group term life insurance policy can be terminated by the employer at any time, with 30 days' notice. He further testified that continued coverage for the uninsurable employee depended both on the employee continuing the employment *and* the employer continuing the policy. Wife does not dispute this evidence, nor does she contend that

anything in husband's employment contract prevented the employer from discontinuing the group plan. Thus, although there is a contingent contract right to policy *proceeds* in the event of death during the term, there is no right on the part of husband to compel the employer to *renew* the coverage upon expiration of the term. In other words, the prospect of renewal of the policy by the employer was a beneficence to which husband had no enforceable right.

Thus, while the renewal right has potential value, we conclude that in the absence of a right by the insured spouse to enforce that value, the renewal right is not "property" within the meaning of the community property laws. (*In re Marriage of Brown, supra,* 15 Cal.3d at pp. 844-845.) That the policy *was* renewed in this case is immaterial, because this is not a question to be answered in hindsight. As a matter of law, the renewal right aspect of an employment-related group term life insurance policy is not property subject to division in marital dissolution where the employee has no enforceable right to renewal.

This result is equitable, because the community has received the full benefit of its bargain—continued coverage protection throughout the course of the marriage. There is no carry-over right from the days of the marriage. There is no right to insurance that transcends the separation.

We conclude the trial court erred in finding the insurance policy in this case to be a community property asset.

### DISPOSITION

The judgment is reversed. Appellant will recover her costs on appeal.

Puglia, P. J., and Nicholson, J., concurred.