54 So.3d 346 (2009)
Aletha Brown THOMAS
v.
Brian THOMAS.
2071171.
Court of Civil Appeals of Alabama.
July 17, 2009.
Stephen M. NeSmith of Riggs & NeSmith, P.A., Montgomery; and J. Keith Rodgers, Montgomery, for appellant.
*347 C. Franklin Snowden III, Montgomery, for appellee.
THOMAS, Judge.
Aletha Brown Thomas ("the wife") appeals from a judgment entered by the Montgomery Circuit Court in favor of Brian Thomas ("the brother") in her action to recover the proceeds of a life-insurance policy owned by John T. Thomas, Jr. ("the husband"). We affirm.

Facts and Procedural History
The husband and the wife were married in 1998. One child ("the child") was born of the marriage. During the course of the marriage, the husband purchased a $500,000 term life-insurance policy and named the wife as the beneficiary. The policy did not contain any restrictions preventing the husband from changing the beneficiary of the policy. The monthly premiums on the policy were paid from marital funds. In late 2003, the parties separated and the husband filed for a divorce in the domestic-relations division of the Montgomery Circuit Court ("the family court").
On March 17, 2004, the husband and the guardian ad litem appointed to represent the child jointly moved the family court to, among other things, enter a temporary restraining order ("TRO") restraining the wife from removing any marital assets from the marital residence. The family court entered a TRO that, in pertinent part, restrained both the husband and the wife from "removing and disposing of any marital asset of the parties."
After the entry of the TRO, the husband changed the beneficiary of the term life-insurance policy from the wife to the brother. The husband died while the divorce action was still pending in the family court and the TRO was still in effect. The insurance company paid the proceeds of the policy to the brother.
The wife filed an action in the Montgomery Circuit Court ("the trial court") to recover the proceeds of the life-insurance policy. The wife claimed that the husband had violated the TRO by changing the beneficiary of the life-insurance policy. The wife asked the trial court to impose a constructive trust on the life-insurance proceeds and to declare the wife the true owner of the proceeds. The wife moved the trial court for a summary judgment, which the court denied. The wife then filed a motion for reconsideration, which the court also denied. The trial court also denied a second motion for summary judgment filed by the wife.
On July 8, 2008, the trial court heard evidence ore tenus and entered an order in favor of the brother, finding that because the term life-insurance policy was not a marital asset, the husband did not violate the TRO by changing the beneficiary of the policy. The wife timely appealed to the Alabama Supreme Court, and that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975. This court heard oral argument on May 7, 2009.

Issues
The wife presents two issues in her appeal: (1) whether the trial court erred when it held that the husband did not dispose of a marital asset in contravention of the TRO when he changed the beneficiary of the term life-insurance policy; and (2) whether the trial court erred in not imposing a constructive trust for the benefit of the wife on the proceeds of the life-insurance policy.

Standard of Review
The material facts are undisputed. "Because the issues before us involve only the application of law to undisputed facts, our review is de novo." State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, *348 810 (Ala.2005) (citing Alfa Mut. Ins. Co. v. Small, 829 So.2d 743, 745 (Ala.2002); and Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).

Analysis
This case presents a question of first impression: whether a party, by changing the beneficiary of a term life-insurance policy, violates a TRO restraining that party from removing or disposing of marital assets. The wife argues that a term life-insurance policy is a marital asset. In support of her argument, the wife analogizes term life-insurance proceeds to unvested military-retirement benefits, citing Jackson v. Jackson, 656 So.2d 875 (Ala. Civ.App.1995). In that case, a plurality decision, this court held that unvested military-retirement benefits are marital assets, stating "one's right to retirement benefits is a contractual right, subject to a contingency, and is a form of property." 656 So.2d at 877. This court also cited approvingly to an opinion of the Court of Civil Appeals of Texas for the proposition that "the possibility of forfeiture did not reduce the [nonvested retirement] benefits to a mere expectancy." Id. (citing Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968)). However, Alabama courts have long held that the beneficiary of a life-insurance policy does not hold a contingent contract right to the proceeds of the policy during the life of the insured but, instead, has only a mere expectancy. See Stephenson v. Westbrook, 286 Ala. 620, 624, 244 So.2d 569, 572 (1970) ("Where an insured has the right to change the beneficiary of his policy, a beneficiary has no vested right or interest under the policy but only an expectancy which becomes vested only upon the death of the insured." (citing Flowers v. Flowers, 284 Ala. 230, 224 So.2d 590 (1969))); see also Barfoot v. Barfoot, 245 Ala. 593, 594, 18 So.2d 465, 465 (1944) ("The interests of the named beneficiary in a policy of insurance providing for a change of beneficiary at the will of the insured is a mere expectancy. The right of a named beneficiary, no change having been made in fact or legal effect, becomes a fixed, vested and legal interest, at the death of the insured."); Wilkerson v. Gallahar, 24 Ala.App. 62, 63, 129 So. 799, 800 (1930) ("Ordinarily, a beneficiary named in a policy of life insurance has a mere expectancy, subject to change without notice by the insured."); and McDonald v. McDonald, 212 Ala. 137, 141, 102 So. 38, 41 (1924) ("[T]he interest of the named beneficiary in a policy of insurance providing for a change of beneficiary at the will of the insured is a mere expectancy.").
Other states that, like Alabama, follow the expectancy rule for life-insurance beneficiaries have held that a term life-insurance policy is not a marital asset. In Metropolitan Life Insurance Co. v. Tallent, 445 N.E.2d 990 (Ind.1983), the Supreme Court of Indiana answered the following certified question from the United States Court of Appeals for the Seventh Circuit:
"`Whether an insured may change the designation of beneficiary of a group life insurance policy during the pendency of a marriage dissolution proceeding in which a temporary restraining order, which restrains the insured from "transferring. . . or in any way disposing of any property except in the usual course of business or for the necessities of life," is in effect.'"
Id. at 991. The court held that the TRO in effect in that case did not prevent the husband from changing the designated beneficiary. The court stated:
"In the case at bar, the [wife] had, prior to the change in beneficiary, a mere expectancy in the proceeds. Had there been life-time benefits associated *349 with the policy, such as a cash surrender value, we believe under our statutory definition of property . . . [the husband] would have been precluded by the restraining order from exercising those benefits in such a manner as to dispose of their value. However, even in that case, the restraining order would not have acted as a bar to the [husband's] right to change the beneficiary of the policy."
Id. at 993.
In Succession of Jackson, 402 So.2d 753 (La.Ct.App.1981), the Louisiana Court of Appeals considered whether a term life-insurance policy was community property. The parties in that case were subject to a restraining order that prohibited both parties from disposing of any community property they had acquired. The husband changed the beneficiary on two of his term life-insurance policies. The husband died while the restraining order was still in effect. The court held that the husband did not violate the terms of the restraining order. The court stated:
"In the matter before us both of the term life insurance policies . . . were acquired during the existence of the community between [the wife] and [the husband]. Therefore, ownership of these policies belongs to the community existing between them. As such the community was entitled to all of the lifetime benefits attributable to a term life policy which, upon accrual of the policy as has occurred here with the death of [the husband], amounts to nothing."
Id. at 757. The court then held, with respect to the term life-insurance policies:
"[The husband] had the authority in those policies to change the beneficiaries. The proceeds of a term policy acquired during the existence of the community do not constitute a community asset, as discussed above, but instead belong to the validly designated beneficiary.. . . Not being a community asset, these proceeds did not come within the scope of the injunction protecting the community estate. Accordingly, the injunction was no bar to [the husband's] policy right to change his beneficiary."
Id. at 759.
In Lindsey v. Lindsey, 342 Pa.Super. 72, 492 A.2d 396 (1985), the Superior Court of Pennsylvania considered whether a husband had violated a preliminary injunction preventing him from disposing of any marital property when he changed the beneficiary designated of in his life-insurance policies. The court held:
"[W]e find that [the wife's] interest as a beneficiary was nothing more than an expectancy. Her interest in the policies themselves was limited to their cash surrender value. Since a change in a beneficiary designation in a life insurance policy is not a conveyance or disposal of a marital asset, [the husband's] decision to designate [another person] rather than [the wife] as his beneficiary did not violate the lower court's injunction. . . ."
342 Pa.Super. at 79, 492 A.2d at 399.
In Bell v. Bell, 896 S.W.2d 559 (Tenn.Ct. App.1994), the Tennessee Court of Appeals considered whether a husband had violated a restraining order prohibiting the husband from disposing or removing any marital property or assets when he changed the beneficiary designated in his life-insurance policy. The Tennessee court first noted that "[i]t is settled in Tennessee that [the beneficiary of a life-insurance policy] has no vested right or interest in the policy but rather a mere expectancy." Id. at 562. The court then reasoned that a retraining order prohibiting the husband in that case from "`removing, selling, mortgaging, transferring, or in any other manner dissipating *350 the property or assets of the parties'" was insufficient to prevent the husband from changing the beneficiary of his life-insurance policy. Id. at 564.
The wife in this case next argues that a term life-insurance policy is a marital asset because, she argues, the policy has a present value. In support of this argument, the wife cites In re Marriage of Gonzalez, 168 Cal.App.3d 1021, 214 Cal.Rptr. 634 (1985), in which the California Court of Appeals for the Third District held that a term life-insurance policy had present value and, therefore, was a marital asset. The court reasoned that a term life-insurance policy had value because the policy premiums might be lower than the premiums on a new policy. The court also reasoned that the right to renew the policy had value because the insured might have become uninsurable and, therefore, unable to obtain coverage at all.
California courts are split on the question of whether a term life-insurance policy is a marital asset. In In re Marriage of Lorenz, 146 Cal.App.3d 464, 194 Cal.Rptr. 237 (1983), the California Court of Appeals for the Second District held that term life-insurance was not marital property. That court reasoned that, "unlike whole life insurance, term life insurance is generally accepted as having no value, since once its term has expired it is worthless." 146 Cal.App.3d at 468, 194 Cal.Rptr. at 239. The court went on to hold that "[t]he proceeds or benefits of the [term life-insurance] policy, of course, have a value. However, until those benefits are payable, the policy itself is worthless." 146 Cal. App.3d at 468, 194 Cal.Rptr. at 239-40.
In Estate of Logan, 191 Cal.App.3d 319, 236 Cal.Rptr. 368 (1987), the California Court of Appeals for the First District analyzed and rejected the holding in Gonzalez, noting that, in reaching its holding, the Gonzalez court had "assumed [that] `undoubtedly the premium rate was very favorable' and [that the] `husband was not required to establish medical eligibility for coverage,' and [had] concluded, `We are confident the same policy today, assuming the husband is still insurable, would cost considerably more.'" Logan, 191 Cal. App.3d at 325, 236 Cal.Rptr. at 371. The Logan court then noted that there was no evidence cited in Gonzalez to support those assumptions. In this case, we similarly find no evidence in the record to support a conclusion that the husband had become uninsurable or that a replacement policy would have higher premiums. Thus, it would be purely speculative to determine that a term life-insurance policy has present value, and, thus, is a marital asset, on these grounds.
Because Alabama courts consider a beneficiary's interest in the future proceeds of a life-insurance policy a mere expectancy, we are persuaded by the opinions of the courts of other jurisdictions that also follow that rule. We also find the reasoning expressed in Lorenz and Logan more consistent with this view of life insurance proceeds than the reasoning in Gonzalez. Thus, a term life-insurance policy is not a marital asset. As a result, the husband in this case did not violate the TRO, and the trial court's judgment is due to be affirmed.[1]

Conclusion
A term life-insurance policy is not a marital asset. Thus, the husband did not violate the TRO that prevented the removal *351 or disposal of marital assets.[2] Therefore, we affirm the judgment of the trial court.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, P.J., concurs in the result, with writing, which MOORE, J., joins.
BRYAN, J., dissents, with writing.
THOMPSON, Presiding Judge, concurring in the result.
By deciding the issue whether a term life-insurance policy constitutes a marital asset, the main opinion goes further than I believe is necessary in resolving this appeal. Even if the term life-insurance policy at issue in this case constituted marital property, the husband's change of beneficiary on the policy from the wife to the brother in no way constituted "removing and disposing" of that policy in violation of the trial court's temporary restraining order.
Although it does not appear that either this court or our supreme court has addressed the question of what acts constitute removing and disposing of marital property in a case like the present one, courts in other jurisdictions have. See, e.g., Nicholas v. Nicholas, 277 Kan. 171, 83 P.3d 214 (2004); and Gleed v. Noon, 415 Mass. 498, 614 N.E.2d 676 (1993). In Gleed, the husband, who owned a life-insurance policy naming the wife as beneficiary, commenced an action for a divorce. While the action was pending, the probate court issued a temporary restraining order preventing the husband and the wife from, among other things, "`withdrawing, transferring, conveying, assigning, spending, encumbering, pledging, bequeathing or otherwise divesting themselves of any assets in which they have acquired an interest during their marriage to each other and which are subject to division by [the Probate Court]. . . .'" 415 Mass. at 499, 614 N.E.2d at 677. Following the entry of that order, the husband changed the beneficiary on the life-insurance policy from the wife to the parties' daughter. Subsequent to changing the beneficiary of the life-insurance policy, the husband died. At the time of his death, the divorce action was still pending.
The wife sought a judgment from the probate court declaring that the husband's change of beneficiary on the life-insurance policy was void because the change violated the terms of the temporary restraining order. After the wife received such a declaration from the probate court, the daughter appealed. Reversing the probate court's judgment, the Supreme Judicial Court of Massachusetts held that the husband's change of the beneficiary of the policy was not a violation of the probate court's temporary restraining order. The court wrote:
"In this case the order did not specifically prohibit, restrain, or prevent the decedent from changing the beneficiary on any of his policies or accounts and the decedent could not have been guilty of contempt for doing so if he had survived. Absent a specific court order preventing or prohibiting the beneficiary change, the decedent had the right to change the beneficiary designation on the . . . life insurance policy while retaining ownership in compliance with the injunction.. . .

*352 "A change of beneficiary on a policy. . . is not a conveyance, transfer, or disposal of the proceeds because they are not acquired until the death . . . of the insured. . . . A beneficiary's interest is a conditional interest subject to defeasance until the death of the insured. . . . The beneficiary is only entitled to receive proceeds from a policy if the insured dies without changing the beneficiary designation."
415 Mass. at 500, 614 N.E.2d at 678 (emphasis added). Thus, the Massachusetts appellate court concluded that, although the probate court's order restraining the parties from disposing of marital property required the husband to retain ownership of the policy, it did not prohibit his changing the beneficiary on the policy.
The court in Nicholas, supra, reached the same conclusion as the Gleed court, but it provided a more detailed analysis as to why the changing of a beneficiary on a life-insurance policy does not constitute a disposal of the policy. In Nicholas, the husband owned a life-insurance policy that named the wife as the beneficiary. The wife filed for a divorce from the husband, and the trial court entered a temporary restraining order preventing the parties from disposing of assets. After that order was entered, but before a final judgment of divorce was entered, the husband changed the beneficiary of his life-insurance policy from the wife. Thereafter, and, again, before the entry of a divorce judgment, the husband died. Following the husband's death, the wife asserted claims against the new beneficiary under the policy. The trial court entered a summary judgment in her favor, holding that the husband's change of the beneficiary of the policy constituted a violation of the temporary restraining order. The husband's executor appealed to the Supreme Court of Kansas, which reversed.
The court began by rejecting the executor's argument that the life-insurance policy did not constitute a marital asset. However, it continued, the fact that the life-insurance policy was marital property does not mean that the change of the beneficiary of that policy constituted disposing of the policy. Instead, it concluded that the change of the beneficiary did not, in fact, constitute disposal of the asset. The court wrote:
"Within the context of estate planning, other courts have recognized that the purpose of statutes such as K.S.A.2002 Supp. 60-1607(a)(1) is not to `freeze each party's estate plan as of the date of the filing' of the divorce action, rather it `is to forbid actions by either party that would dissipate the property of the marital estate or place it beyond the court's adjudicatory power in the dissolution proceeding.' Lonergan v. Strom, 145 Ariz. 195, 200, 700 P.2d 893 (Ct.App. 1985). See Benson v. District Court, 57 Idaho 85, 91-92, 62 P.2d 108 (1936); Girardi v. Girardi, 140 A.D.2d 486, 487, 528 N.Y.S.2d 397 (1988); Lindsey v. Lindsey, 342 Pa.Super. 72, 76, 492 A.2d 396 (1985); Dyer v. Dyer, 87 S.W.2d 489, 490 (Tex.Civ.App.1935); In re Knickerbocker, 912 P.2d 969, 976 (Utah 1996).
"In this case, the restraining order did not limit the use or control of the property in question, at least in a way which affects the issues in this case. Thus, the question is whether [the husband]'s actions disposed of the property. An appropriate test for this determination is that recognized in the above-cited cases: whether the action affected the value of the marital estate or placed the property outside the adjudicatory power of the court. [The husband]'s action did not change the value of the marital estate and did not do anything that would prevent the court from having power over *353 the property for purposes of property division.
"[The wife] . . . had no vested interest in the insurance policy because `"[a] beneficiary has only an inchoate right to the proceeds of a policy, subject to being divested at any time during the lifetime of the insured, by transfer, assignment, or change of beneficiary."' [Wear v. Mizell,] 263 Kan. [175,] at 178, 946 P.2d 1363 [(1997)] (quoting Hollaway v. Selvidge, 219 Kan. 345, 349, 548 P.2d 835 [1976]). Had [the wife] and [the husband] not been parties in an action for divorce, [the husband] could have changed the beneficiary designation. . . .
"Furthermore, had the divorce been granted before [the husband]'s death, [the wife]'s interest in the property and its value to the estate remained within the adjudicatory power of the court. Pursuant to K.S.A.2002 Supp. 60-1610(b)(1), the district court would have had the power to divide the property, including granting the cash value or appropriate balances to [the wife], or to order [the husband] to change the beneficiary designations he had previously made. . . .
"The Court of Appeals held [the husband]'s actions changed the value of the estate. It did change the value of the estate which [the wife] received upon [the husband]'s death. However, changing or designating a beneficiary did not change the cash value of the insurance policy or the account balances and, therefore, did not change the value of the marital estate for divorce purposes. The appropriate inquiry is only the impact upon the marital estate, and [the husband]'s beneficiary designations had no impact until his death. At that point, the divorce action abated and there remained no action for division of the marital estate. . . . [The wife] no longer had a vested interest in the property pursuant to K.S.A.2002 Supp. 23-201.
"We hold that [the husband] did not dispose of property by . . . changing the beneficiary on the life insurance policy. Under the provision of K.S.A.2002 Supp. 60-1607(a)(1) allowing a court to issue an order providing for the use, management, and control of property, the district court had the power to prohibit [the husband] or [the wife] from making a change of beneficiary designation, but no such order was entered in this case."
Nicholas, 277 Kan. at 182-84, 83 P.3d at 222-24.
I find the Kansas Supreme Court's analysis in Nicholas persuasive on what, in my view, is the dispositive question at issue in this case, that is, whether the husband's change of the beneficiary of his term life-insurance policy from the wife to the brother constituted removing and disposing of the policy. In the present case, regardless of whether the insurance policy constituted a marital asset, the husband's change of beneficiary did not deprive the parties of the policy, because the husband continued to own the policy, the value of the policy had not been diminished, and, to the extent the insurance policy did constitute a marital asset, the trial court hearing the divorce action retained control over the insurance policy for purposes of the final division of the marital property. As a result, the husband's change of the beneficiary of the policy to his brother did not constitute removing and disposing of the insurance policy, and the question whether that policy constituted a marital asset need not be resolved.
Were this court to resolve the appeal on the narrower ground of whether a change of beneficiary in a term life-insurance policy constitutes removing and disposing of the insurance policy, we would, rightfully in my view, leave open for another day the *354 question whether, in circumstances such as those presented in the present case, one party's failure to maintain ownership of an insurance policy (rather than merely changing the beneficiary of that policy) constitutes the transfer and disposal of a marital asset. For that reason, I concur in the result.
MOORE, J., concurs.
BRYAN, Judge, dissenting.
I respectfully dissent. In my opinion, the term life-insurance policy constituted a marital asset, and the temporary restraining order ("the TRO") entered in the divorce action involving Aletha Brown Thomas ("the wife") and John T. Thomas ("the husband") prohibited the husband from changing the beneficiary of the term life-insurance policy from the wife to Brian Thomas ("the brother"). Therefore, I would reverse the trial court's judgment, which holds that the term life-insurance policy is not a marital asset.
No Alabama case has specifically addressed the issue whether a term life-insurance policy constitutes a marital asset. To support its conclusion that a term life-insurance policy does not constitute a marital asset, the main opinion relies on cases decided in other jurisdictions, which, obviously, do not constitute binding precedent in Alabama. Although this court can follow cases decided in other jurisdictions if they are not contrary to precedent of the Alabama Supreme Court, I do not find the cases relied upon by the main opinion to be persuasive.
In my opinion, the contingent right to receive the proceeds of a term life-insurance policy is analogous to the contingent right to receive payment of unvested military-nondisability-retirement benefits, which has been held to constitute a marital asset subject to division in a divorce action in Alabama. See Jackson v. Jackson, 656 So.2d 875, 877-78 (Ala.Civ.App.1995) (plurality decision).
In Jackson v. Jackson, a plurality of this court held that the contingent right to receive payment of unvested military-nondisability-retirement benefits is a marital asset subject to division in a divorce action even though the right to receive those benefits is subject to forfeiture and, therefore, might never occur. In pertinent part, this court stated:
"We believe the better view . . . is that military nondisability retirement pay, whether or not vested, constitutes a marital asset subject to division upon the dissolution of the marriage. See, e.g., In re Marriage of Harrison, 13 Kan.App.2d 313, 769 P.2d 678 (1989); Cearley v. Cearley, 544 S.W.2d 661 (Tex. 1976); Poe v. Poe, 711 S.W.2d 849 (Ky. App.1986); LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755 (S.Ct.N.M.1969); Miser v. Miser, 475 S.W.2d 597 (Tex.Civ. App.1971); Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968); and In re Marriage of Brown, 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976).
"We believe that a benefit right, whether or not it is vested, constitutes an asset that should be shared and, therefore is subject to division upon divorce. The Court of Civil Appeals of Texas held in Mora, supra, that retirement benefits were not gratuities, but earned property rights. There, the husband had not retired from military service, but had completed over 25 years of service with over 14 of those years being served during the marriage. The court held that the husband obtained a property right, even though the vested benefits were not payable at the time of the divorce and might never be received if the husband was dishonorably discharged or died before his actual retirement. *355 The court pointed out that the possibility of forfeiture did not reduce the benefits to a mere expectancy, but instead made them subject to division as property.
"Further, in LeClert, supra, the Supreme Court of New Mexico approved the award of an interest in military retirement benefits of the husband as community property. There, as here, the retirement payments were contingent on the husband's completion of service, and his right to them would not vest until after the termination of the marriage. Likewise, in Miser, supra, the Texas Court of Civil Appeals upheld a division of retirement pay where the husband had served approximately 18 and one-half years in the military at the time of the divorce. The court held that if the husband served at least 20 years, the retirement benefit that accumulated during the marriage would be community property.
"We hold that one's right to retirement benefits is a contractual right, subject to a contingency, and is a form of property. A contrary holding would produce inequitable results."
656 So.2d at 877 (emphasis added); see also Mosley v. Mosley, 747 So.2d 894, 901 (Ala.Civ.App.1999) (recognizing that lawsuit claims and counterclaims are assets and liabilities, respectively, to be divided in a divorce despite their contingent nature).
Moreover, I agree with the conclusion of the California District Court of Appeal in In re Marriage of Gonzalez, 168 Cal. App.3d 1021, 214 Cal.Rptr. 634 (1985), that, even though a term life-insurance policy has no cash surrender value, it has economic value while the insured is alive because it provides insurance coverage during its term that might otherwise be more expensive or unavailable altogether due to the insured's advancing age or declining health.[3] Accordingly, I would hold that the right to receive the proceeds of a term life-insurance policy is an asset within the meaning of the TRO despite its contingent nature. Moreover, because the evidence is undisputed that the premiums for the term life-insurance policy were paid with marital funds, I would hold that it was a marital asset subject to division in the divorce action and thus was subject to the TRO.
Furthermore, I do not agree with the position expressed in the other special writing that the husband's changing the beneficiary of the term life-insurance policy did not constitute "removing" or "disposing" of the term life-insurance policy and that it, therefore, did not violate the TRO. By changing the beneficiary of the term life-insurance policy from the wife to the brother, the husband "disposed" of the wife's contingent right to receive the proceeds of the term life-insurance policy. *356 Therefore, in my opinion, he violated the TRO when he changed the beneficiary of the term life-insurance policy from the wife to the brother.
NOTES
[1] Because we affirm the trial court's judgment determining that the husband did not violate the TRO, we do not need to address the issue whether the trial court should have imposed a constructive trust on the life-insurance proceeds.
[2] We note that it is well within the power of a trial court to include in a TRO a requirement that a spouse maintain or obtain a life-insurance policy with the other spouse named as beneficiary, if requested. However, in this case, there was no such request and the TRO did not contain any such requirement.
[3] In fashioning divorce judgments, trial courts often include provisions requiring a spouse to insure his or her life for the benefit of the other spouse or the minor children born of the marriage. Thus, a term life-insurance policy that is in existence when the divorce action is initiated may also have value, despite its contingent nature, because it facilitates the fulfillment of such a provision. Moreover, the utility of existing term life-insurance policies in fulfilling such provisions further justifies the conclusion that the term "marital asset" encompasses existing term life-insurance policies when it appears in a temporary restraining order entered to maintain the status quo in divorce actions pending the entry of a final divorce judgment.

In addition, provisions in term life-insurance policies providing that they can be converted to whole life-insurance policies can also confer value on a term life-insurance policy despite its contingent nature, although the page containing the convertibility provision of the policy at issue in the action now before us is not in the record.